UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES ROANE<br><br>                    Plaintiff,<br><br>        v.<br><br>A&E TELEVISION NETWORKS, LLC,<br>SWIRL FILMS, LLC, AND JOHN DOES 1-10<br>                    Defendants. | **VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Charles Roane ("Plaintiff" or "Mr. Roane"), by and through his undersigned counsel, brings this action against Defendants A&E Television Networks, LLC ("A&E") and Swirl Films, LLC ("Swirl"), and John Does 1-10 (collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from the Defendants' unlawful conduct in producing and distributing the film *Pretty Hurts*, which features the unauthorized appearance of Haley Gosserand ("Ms. Gosserand"), an artist under exclusive contract with Mr. Roane. Defendants have commercially exploited her name, image, likeness, and persona without authorization or a valid license.

2. Roane does not seek to suppress the content of the film or restrain Defendants' expressive speech, but instead challenges the unauthorized commercial use of an artist's likeness in violation of exclusive contractual rights.

3. Defendants' actions constitute (1) violation of Mr. Roane's contractual and statutory rights of publicity; (2) unfair competition; and (3) unjust enrichment under New York common law.

## PARTIES

4. Plaintiff, Charles Roane a Grammy-winning producer, artist representative and manager, and resident of the State of Maryland.

5. Defendant, A&E Television Networks, LLC is a Delaware limited liability company with its principal place of business located at 235 East 45th Street, New York, NY 10017.

6. Defendant Swirl Films, LLC. is a Delaware limited lability company with its principal place of business in Atlanta, GA.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant, A&E Television Networks, LLC resides in this District, and a substantial part of the events giving rise to the claims occurred here. Defendant, Swirl Films, Inc. has sufficient contacts within this District including its contractual relationship with A&E, a New York-based company, for the production and commercial exploitation of the film Pretty Hurts. Upon information and belief, Swirl Films regularly transacts business with A&E and other New York-based entities, and directed its conduct, including the production and licensing of the film at issue toward this District with the knowledge and intent that it would be broadcast and distributed nationwide through Lifetime, a network headquartered in New York.

## FACTUAL ALLEGATIONS

9. Roane is a Grammy-winning music producer with over thirty years of experience.

10. On December 9, 2022, he entered into an Production and Management Agreement with aspiring artist Haley Gosserand, granting him sole authority to approve ***all*** televised appearances by Ms. Gosserand. This Agreement, amended in February and July 2024, remains in full force and effect (hereinafter referred to as the "Agreement"). Ex. A-C.

11. Section 4.3 of the Agreement provides: ***"All televised appearances shall be approved by Roane."*** The Agreement also explicitly grants Roane the right to control Gosserand's commercial exploitation, including use of her name, image, and likeness in film, television, and promotional content. *Id*. at § 2.1(b)

12. Critically, that Agreement, acknkowledges any unauthorized appearance, of the subject, Ms. Gosserand would cause Roane *irreparable harm*. *Id*. at § 15.1.

13. For more than two years, Roane has invested significant time, resources, and industry expertise into shaping and advancing Ms. Gosserand's career, laying the foundation for her professional growth and public image.

14. Roane was blindsided when he discovered that Ms. Gosserand had been cast in *Pretty Hurts*, a Lifetime film produced by Swirl Films and distributed by A&E without his knowledge, consent, or approval.

15. On June 4, 2025, Roane issued a cease and desist letter to Lifetime,[1] enclosing the governing contract and expressly stating that Gosserand's appearance was unauthorized and in violation of his contractual rights. Ex. D.

---

[1] On June 12, 2025, A&E Networks responded advising Roane that "[Lifetime] has no connection to this matter. It has no employees, does not manage or operate the Lifetime® network (on which the movie featuring Ms. Gosserand is scheduled to air), and the Lifetime® network is a brand of A&E Television Networks, LLC (not a separate entity)."

16. On June 12, 2025, in response to Roane's cease and desist letter, A&E advised that Swirl Films was involved in the production of *Pretty Hurts*. Swirl was copied on that initial correspondence and has been included in all subsequent communications. Ex. E.

17. On June 16, 2025, Roane responded categorically, rejecting A&E's reliance on a First Amendment defense, noting that such constitutional protections do ***not*** apply to the unauthorized commercial use of a private artist's image. He reiterated that he holds exclusive rights over Ms. Gosserand's appearances and warned that continued distribution would constitute knowing interference and misappropriation. Ex. F.

18. Rather than acknowledge the binding effect of Roane's Agreement, A&E escalated by retaining outside counsel, who in a phone call (and subsequent email) continued to cling to meritless First Amendment arguments and threatened anti-SLAPP sanctions. Ex. G001-002.

19. In a further display of bad faith, A&E's counsel then questioned whether an agent such as Roane could assert rights on behalf of an artist, despite the existence of a fully executed and legally enforceable contract. Ex. G-003.

20. On June 23, 2025, Roane issued a final written response. He again rejected A&E's reliance on constitutional defenses, clarifying that his claims arose ***not*** from a desire to censor speech, but from the unauthorized commercial exploitation of a contractually bound artist. He emphasized that neither the First Amendment nor any anti-SLAPP statute shields A&E's conduct from liability. He extended one final opportunity to resolve the matter amicably before pursuing injunctive and monetary relief. Ex. H.

21.   In a pattern consistent with the present case, Swirl has on at least two prior occasions, violated talent agreements and exploited the names, likenesses, and performances of artists without consent.

22.   In *Brown v. TV One et al.*, No. 1:17-cv-06824 (S.D.N.Y. 2017),[2] Swirl was sued by recording artist Robert Brown (aka Bobby Brown), who alleged that Swirl and its partners produced and marketed a biopic film about his daughter, Bobbi Kristina Brown, using his name, likeness, and life story **without consent**, **despite a pre-existing contract prohibiting such use**.

23.   That lawsuit included claims under New York Civil Rights Law §§ 50–51, for violation of the right of publicity, and asserted that Swirl's conduct caused irreparable harm and confusion as to sponsorship and endorsement.

24.   In *McCabe v. Swirl Films*, 1:16-cv-00363 (S.D.N.Y. 2016),[3] Swirl was sued for distributing a DVD version of a film containing the performance of actor Brian McCabe despite having no DVD rights.

25.   Both suits alleged commercial exploitation in disregard of performers' rights and resulted in claims for injunctive relief, damages, and Lanham Act violations.

26.   A&E, as a sophisticated national distributor and co-producer, had a legal and professional obligation to conduct reasonable diligence before licensing or distributing content from Swirl.

---

[2] https://www.courtlistener.com/docket/6149876/3/brown-v-tv-one-llc/ Last accessed June 24, 2025.
[3] https://www.courtlistener.com/docket/4356445/6/mccabe-v-entertainment-one-us-lp/ Last accessed June 24, 2025.

27. The existence of multiple federal lawsuits involving Swirl's unlawful production practices was publicly available and easily discoverable.

28. On information and belief, A&E failed to investigate Swirl's litigation history and proceeded to distribute *Pretty Hurts* without first ensuring that underlying rights, including Roane's publicity rights, were cleared.

29. By failing to vet Swirl's track record or confirm the existence of clearances and waivers for featured talent, A&E acted recklessly and in bad faith, directly contributing to the commercial exploitation of an artist bound by an agreement.

30. Despite being placed on actual notice of Roane's rights as early as June 4, 2025, A&E continued preparations to release and promote the film, doubling down on their position and threatening litigation rather than taking any corrective action.

31. The film remains scheduled for release on June 28, 2025.

## COUNT I
**Violation of Right of Publicity**
(Against A&E and Swirl)

32. Roane realleges and incorporates by reference the allegations set forth in Paragraphs 1-31 as if fully set forth herein.

33. The Agreement expressly states that Roane holds shall approve the use of Ms. Gosserand's name, image, likeness, and persona in connection with televised appearances and promotional use. Ex. A §§ 2.1(b), 4.3.

34. Defendants used Gosserand's identity in *Pretty Hurts* and in related marketing without authorization, license, or waiver of Roane's rights.

35. Such unauthorized commercial exploitation constitutes a violation of Roane's right of publicity as contractually granted and protected under New York Civil Rights Law §§ 50–51.

36. Defendant Swirl Films is a repeat offender with a known history of similar misconduct involving misappropriation of performers' names, likenesses, and performances.

37. In *Brown v. Swirl Films*, Swirl was sued for the unauthorized use of Bobby Brown's persona in a biopic about his daughter.

38. In *McCabe v. Swirl Films*, Swirl unlawfully distributed a DVD without securing appropriate media rights from the performer. These prior lawsuits, both filed in the Southern District of New York, alleged conduct virtually identical to what is alleged here: Swirl's commercial exploitation of protected identities without consent.

39. A&E is a sophisticated media entity with extensive experience in the development, acquisition, and distribution of audiovisual content.

40. Given Swirl's repeated and public history of violating publicity rights, A&E had a duty to conduct reasonable due diligence before licensing *Pretty Hurts* from Swirl or airing it through Lifetime, its affiliated network.

41. A&E either failed to perform this due diligence or chose to ignore red flags regarding Swirl's practices.

42. In doing so, A&E became complicit in the unauthorized use of Gosserand's identity and Roane's contractual rights.

43. The violation of Roane's rights was not merely incidental, it was the foreseeable result of a systemic failure by A&E to vet its content providers and protect against known patterns of unlawful conduct.

44. Accordingly, A&E's participation in the unauthorized broadcast and promotion of *Pretty Hurts* was not innocent or inadvertent. It constituted knowing, willful, or at minimum, reckless conduct that justifies the imposition of statutory and punitive damages under New York Civil Rights Law § 51.

45. Roane is entitled to injunctive relief, actual damages, and punitive damages as a result of Defendants' unlawful exploitation of his contractual publicity rights.

## COUNT II
### Unfair Competition (New York Common Law)
(Against A&E and Swirl)

46. Roane realleges and incorporates by reference the allegations set forth in Paragraphs 1-45 as if fully set forth herein.

47. Defendant Swirl, as the original producer of *Pretty Hurts*, directly contracted with Ms. Gosserand and had a duty to conduct reasonable diligence to identify existing contractual obligations.

48. On information and belief, Swirl failed to make even minimal inquiries and ignored industry standards that require producers to secure representations and warranties or underlying contractual clearances when engaging featured talent.

49. Swirl's conduct was especially reckless given that it later sold or licensed *Pretty Hurts* to A&E, knowing or having reason to know that Gosserand's appearances may have been contractually restricted. Swirl's failure to verify or secure underlying rights before commercial exploitation represents a deliberate disregard for standard industry practices.

50. Swirl has also demonstrated a persistent pattern of disregard for contractual agreements and publicity rights. In Brown *v. Swirl Films*, Swirl produced and promoted a biopic depicting Bobby Brown without authorization, prompting federal litigation for defamation and right-of-publicity violations. In *McCabe v. Swirl Films*, Swirl unlawfully distributed a DVD featuring an actor's performance without securing media rights, again resulting in claims under New York Civil Rights Law §§ 50–51.

51. These public records show a repeated pattern of exploiting artist likenesses and performances without legal clearance.

52. A&E, as a sophisticated downstream distributor and co-producing entity, had both the resources and obligation to conduct reasonable due diligence before acquiring distribution rights to *Pretty Hurts*.

53. On information and belief, A&E failed to undertake such diligence and ignored clear red flags surrounding Swirl's track record of litigation and clearance failures.

54. After receiving actual notice of Roane's rights on June 4, 2025, backed by binding contractual documentation, A&E had an opportunity and legal obligation to reassess its role in promoting and releasing the film. Instead, A&E chose to ignore those rights in bad faith and continued its commercial exploitation of *Pretty Hurts* across platforms.

55. The actions of both Defendants have commercially exploited the goodwill Roane cultivated in Ms. Gosserand's brand and undermined the contractual rights he secured to manage and control her public image. Their bad-faith misappropriation and unauthorized use of Ms. Gosserand's likeness constitutes actionable unfair competition under New York law

56. As a direct result, Roane has suffered and will continue to suffer economic, reputational, and contractual harm, including the loss of control over the commercial value of Gosserand's identity and professional services.

57. Roane seeks compensatory damages, disgorgement of profits, injunctive relief, and, to the extent Defendants' conduct is found to be willful or malicious, punitive damages to deter future violations.

**COUNT III**
**Unjust Enrichment**
(Against A&E and Swirl)

58. Roane realleges and incorporates by reference the allegations set forth in Paragraphs 1-57 as if fully set forth herein.

59. Defendants have been unjustly enriched through the unauthorized production, promotion, licensing, and anticipated broadcast of *Pretty Hurts*, which prominently features Ms. Gosserand despite Roane's express contractual right to approve the use of her image, likeness, and performance under a valid and enforceable agreement.

60. Defendants' enrichment came at Roane's expense. He devoted substantial time, resources, and professional capital to managing Ms. Gosserand's public image and secured contractual

authority to oversee and benefit from her televised appearances. Those rights have been disregarded and commercially undermined.

61. Defendants derived and retained these benefits without compensating Roane or obtaining any release, license, or waiver, despite having actual or constructive knowledge of Roane's rights.

62. Equity and good conscience require restitution. Roane's contractual rights were and continue to be violated, and Defendants have unjustly profited from their failure to perform even basic diligence or respect Roane's legal interests.

63. Roane seeks an award of damages and disgorgement of all profits unjustly retained by Defendants as a result of their misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Roane respectfully requests that this Court:

    a. Enter judgment in favor of Roane on all counts;

    b. Award compensatory and consequential damages in an amount to be proven at trial;

    c. Award disgorgement of profits and restitution;

    d. Grant a preliminary and permanent injunction enjoining the use, distribution, or airing of *Pretty Hurts* absent Roane's authorization;

    e. Award punitive damages where applicable;

    f. Award attorneys' fees and costs; and

    g. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Roane hereby demands a trial by jury to decide all issues triable in this case.

DATED: June 24, 2025	Respectfully submitted

By:  /s/ Dayna C. Cooper
Dayna C. Cooper (*pro hac vice* forthcoming)

COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642-5470
Dayna@CooperLegalSolutions.com
*Attorney for Plaintiff, Charles Roane*

VERIFICATION

STATE OF MARYLAND
COUNTY OF _____

I, Charles Roane, being duly sworn, depose and say:

I am the Plaintiff in the above-captioned action. I have read the foregoing Verified Complaint and know the contents thereof. The allegations therein are true to my knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

I make this verification pursuant to Rule 11 of the Federal Rules of Civil Procedure and under penalty of perjury under the laws of the United States of America.

Executed on this 24 day of June, 2025.

_____
Charles Roane
Plaintiff

Sworn to before me this 24 day of June, 2025.

_____
Notary Public

My Commission Expires:

CHRISTY E RODRIGUEZ
Notary Public, Georgia
Butts County
My Commission Expires
March 23, 2027