

1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642.5470

June 25, 2025

**VIA ECF / EMAIL**
Hon. Gregory H. Woods
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312
WoodsNYSDChambers@nysd.uscourts.gov

Hon. Katherine Polk Failla
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007
failla_nysdchambers@nysd.uscourts.gov

Re: Roane v. A&E Television Networks, LLC, et al., 1:25-cv-05286-GHW

Dear Judge Woods and Judge Failla:

We write in further response to Defendants' June 25, 2025 letter regarding Plaintiff Charles Roane's motion for a temporary restraining order, to clarify the narrow basis for relief and correct several mischaracterizations.

The cases cited by Defendants are inapposite. Those decisions address attempts to suppress or enjoin the **content or substance** of an expressive work. That is not the issue here. Mr. Roane does **not** seek to block the airing of the film or challenge its creative content. Rather, he seeks to enforce his exclusive contractual rights over the commercial use of his artist's likeness and televised appearances, rights that were voluntarily agreed to, fully executed, and expressly conditioned on his prior approval for any televised performance. There is no attempt to restrain speech; the relief sought targets only the unauthorized use of a performer whose public appearances are contractually controlled. The First Amendment does not shield commercial actors from liability when they knowingly disregard such agreements. The contractual injury here is not speculative: Ms. Gosserand's appearance in a widely promoted film occurred without the required approval and in direct violation of a clear, enforceable obligation.

Defendants' attempt to minimize Mr. Roane's contractual rights, focusing on the purported brevity of the appearance or the lack of direct contractual privity, is both misleading and legally irrelevant. Courts routinely enforce exclusive agreements in similar contexts, and the law does not permit a party to disregard clear contractual obligations merely because they find the resulting content artistically valuable or commercially convenient, as cited in Mr. Roane's motion.

Moreover, the public interest is not served by allowing sophisticated media defendants to ignore contractual restraints and profit from unauthorized performances, under the guise of First Amendment protection. Mr. Roane does not object to the film itself; Defendants are free to air it.

What he objects to, and what this Court is being asked to enjoin, is the inclusion of his contractually-bound artist, whose appearance in the film occurred without the approval the Agreement explicitly requires.

Defendants suggest delay as a basis to deny equitable relief. However, Mr. Roane acted promptly upon learning of the unauthorized use and sought redress (to avoid the burden of court intervention) after verifying the breach. There is no undue delay here, only a refusal by Defendants to cure or negotiate in good faith.

Defendants have been on notice of Plaintiff's exclusive rights since at least June 4, 2025, when Mr. Roane served a cease and desist letter enclosing the governing contract and identifying the precise nature of the violation. Rather than engage in any effort to resolve this matter in good faith, Defendants refused to negotiate in good faith or make any attempts to mitigate the harm. Their failure to engage constructively has only compounded the urgency and severity of the harm to Mr. Roane.

Finally, irreparable harm is not only alleged, it is contractually acknowledged. The Agreement expressly provides that any unauthorized appearance ***shall cause irreparable injury*** to Mr. Roane. This is not a situation where monetary damages can make Mr. Roane whole. His role is not merely financial; it includes curating and managing the timing, platform, and context of his artist's public exposure, elements that once compromised, cannot be undone. The injury here involves damage to reputation, loss of strategic positioning, and dilution of Roane's brand control. These harms strike at the core of what the Agreement was designed to protect and are precisely the kind of injuries TROs are designed to prevent. Courts have consistently held that injuries involving the unauthorized use of intellectual property and publicity rights are difficult to quantify and support a finding of irreparable harm. This Circuit has noted in the preliminary injunction context, "difficulty [in computing damages] is especially common when damage to reputation, credibility or good will is present." *Dino DeLaurentis Cinematografica v. D-150, Inc.,* 366 F.2d 373, 376 (2d Cir. 1966) (citing cases); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc*., 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (noting that irreparable harm exists where there is a "loss of control over business reputation, a loss of trade, and loss of goodwill" "because loss of control over one's reputation is neither "calculable nor precisely compensable.")(citing *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.,* 754 F.2d 91, 95 (2d Cir.1985)); *Broker Genius, Inc. v. Volpone,* 313 F. Supp. 3d 484, 496–97 (S.D.N.Y. 2018) (finding irreparable harm from loss of goodwill, business opportunities, and reputation following breach of a software licensing agreement, and emphasizing that such harms justify injunctive relief)(also noting "it is well accepted that certain breach of contract claims present a threat of imminent loss that cannot be compensated at trial, and so 'there is certainly no ironclad rule against its use.'" (citation omitted).

Mr. Roane respectfully requests that the Court grant the TRO to prevent the continued unauthorized use of his artist's image and performance, in violation of clear contractual rights, not to suppress expression, but to preserve enforceable legal and economic interests.

We thank the Court for its consideration of this urgent matter.

Respectfully submitted,

Dayna C. Cooper
*Counsel for Plaintiff, Charles Roane*

cc: All counsel of record (via ECF)