# EXHIBIT A

PRODUCTION AND MANAGEMENT AGREEMENT

This Production and Management Agreement ("Agreement") dated as of December 9, 2022, by and between Haley Gosserand (hereinafter referred to as "Artist") and Charles Roane (hereinafter referred to as "Roane") (collectively the "Parties" and individually a "Party"), is being entered into in consideration of the following mutual covenants and benefits:

### 1. SERVICES; SCOPE

1.1 **Shopping**. Artist hereby retains Roane as her producer and artist representative in connection with the presentation of Artist to record companies (each, a "Record Label") for purposes of obtaining an exclusive artist recording agreement (the "Recording Agreement") for the benefit of Artist and Roane who will be granted, among other things, the right to distribute audio and audio-visual records ("Records") embodying master recordings ("Masters") of Artist's performances. It is the essence of this Agreement that during the Initial Term hereof, Roane and his representatives shall be exclusively entitled to present Artist to Record Labels and to negotiate for purposes of obtaining a Recording Agreement. Artist agrees to fully cooperate to the best of Artist's ability with Roane in securing the Recording Agreement (including, without limitation, to perform "live" at Roane's expense for showcase purposes as Roane may reasonably request, and Roane shall give due consideration to Artist's preexisting employment obligations in scheduling such showcases) and in satisfying all terms required thereunder. Roane agrees to consult with Artist with respect to the terms of each prospective Recording Agreement. Under the advice and counsel of Roane, Artist shall have sole discretion with regards to entering into a Recording Agreement.

1.2 **Electronic Press Kit**. Roane shall produce, record, and mix an extended play record ("EP") (consisting of up to 15 Compositions) and electronic press kit ("EPK") embodying the performances of Artist. A "Composition" shall mean a single musical composition, irrespective of length, including all spoken words and bridging passages and including a medley. Recordings of more than one arrangement or version of the same Composition, reproduced on the same Record, shall be considered, collectively, a recording of one Composition for all purposes under this Agreement.

1.3 Further, Roane shall pay for all costs associated with the production of the EP and EPK.

1.4 **Artist Management**. Roane hereby agrees during the term hereof to advise, counsel, and direct Artist in connection with all matters relating to Artist's professional career in all aspects of the music industry, including without limitation, (a) in the selection of musical material; (b) with respect to the adoption of proper formats for the presentation of Artist's musical talents and in the determination of the proper style, mood, setting, and characterization in keeping with Artist's musical talents; and (c) in the selection of musical and other talent to assist, accompany, or embellish Artist's musical presentation. The Parties hereby acknowledge that while Roane will be taking on some managerial responsibilities, Roane is not Artist's manager, but shall act in such a capacity until such a time that a manager is retained. Under the advice and counsel of Roane, Artist shall hire a manager to manage her musical career. Notwithstanding, to the extent that Roane disagrees with Artist's decision relating to her music manager such that this Agreement shall be terminated, Artist shall be responsible to Roane for all expenses in accordance with section 6 herein.

1.5 **Non-exclusive**. Roane's services hereunder are non-exclusive and Roane shall at all times be free to perform the same or similar services for others, as well as to engage in any and all

other business activities. Specifically, it is acknowledged and agreed that Roane shall have the right to act as personal manager or producer for any other musicians, vocalists, or other persons whether or not they may be affiliated with Artist and that no advice and counsel which Roane may render to such individuals in connection with Roane's services to them shall be deemed to be a breach of this Agreement or of Roane's obligations and duties hereunder. Roane shall only be required to render reasonable services as provided for herein.

1.6 *No Guarantee*. Roane has not made and does not hereby make, any representation or warranty with respect to securing a Recording Agreement.

## 2. AUTHORITY OF MANAGER

2.1 Roane is hereby authorized and empowered for Artist and on Artist's behalf, to do the following, upon Artist's written approval (text or email to suffice) which shall not be unreasonably withheld:

(a) Roane shall approve and authorize any and all publicity and advertising including but not limited to social media and print media, except that any brand or endorsement deals may be entered into at Artist's sole discretion.

(b) Roane shall approve and authorize any and all use of Artist's name (including Artist's professional name), photograph, likeness, voice, and other identification for purposes of promotion and publicity.

(c) Roane shall approve all televised musical performances.

## 3. TERM AND TERMINATION

3.1 The "Development Term" shall begin on the date set forth above and shall continue through February 28, 2022. The "Shopping Period" shall commence immediately following the Development Term and shall continue until the earlier of (a) two years or (b) upon the date of execution of the Recording Agreement. The "Initial Term" of this Agreement shall begin on the date set forth above and shall terminate following the expiration of the Shopping Period.

3.2 In no event shall the Artist's commitment under this Agreement exceed the maximum time allowable by law, provided that if any provision of this Agreement is determined invalid or unenforceable by a court or then-legally constituted body with jurisdiction to make such determination, the remainder hereof shall remain in full force and effect.

3.3 *Termination During Initial Term*. If during the Initial Term, Artist desires to terminate this Agreement, Artist may do so by providing thirty (30) calendar days written notice. In any such event, Artist shall reimburse Roane for all out-of-pocket costs associated with the performance of this Agreement

3.4 *Termination After Expiration of Shopping Period.* If Roane fails to secure a Recording Agreement on or before the end of the Initial Term, upon expiration of the Initial Term, Artist may terminate this Agreement by giving Roane thirty (30) calendar days written notice. On receipt by Roane of the termination notice, the terms of this Agreement will end and all Parties will be deemed to have fulfilled all of their obligations hereunder.

## 4. ARTIST'S RESTRICTIONS

4.1 Artist shall not enter into any agreement or make any commitment which would or may

      interfere with Roane's performance of any of the terms or provisions of this Agreement.

4.2    Artist shall not produce or perform any selection or portion of any selection produced hereunder for the purpose of Compositions or sound recordings for any person other than Roane or without Roane's approval during the term of this Agreement.

4.3    For avoidance of doubt, Artist shall be permitted to engage in any third-party agreement with respect to Artist's social media without the consent or involvement of Roane. This may include brand and endorsement deals. Artist shall also be permitted to agree to perform at any performance and make any public appearances at Artist's sole discretion except that all televised appearance shall be approved by Roane.

4.4    For avoidance of doubt, Artist shall be permitted to work with other music producers or recording artists. Roane, however, will be the only one permitted to shop Artist as listed in section 1.1.

## 5.  RECORDING COMMITMENT

5.1    During the Development Term, Artist shall perform up to fifteen (15) Compositions selected and/or produced by Roane and Artist to include in the EP. If any EP Composition is embodied on a Record released by the Record Label, it shall be deemed a Master hereunder.

## 6.  EXPENSES; RECORDING COSTS; RECOUPMENT

6.1    Roane shall be entitled to recoup his out-of-pocket costs, whether such costs are incurred before (to the extent identified below in this paragraph) or after the date hereof, paid in connection with the presentation of Artist's material and the entering into of a Recording Agreement (including, without limitation, recording and production costs for the EPK, publicity photos and materials, rehearsal and "showcasing" expenses, travel, etc.) from any and all monies payable under the Recording Agreement. All travel expenses incurred by Roane in connection with his services on Artist's behalf shall be reasonable in light of Artist's stature in the entertainment industry, but Roane shall at all times be entitled to utilize the same type, style, and class of transportation and accommodations as Artist. In the event Artist requests Roane's presence outside of the Maryland metropolitan area, Artist agrees that Artist will reimburse Roane's expenses, including reasonable traveling expenses, reasonable living accommodations, meals and other such expenses, in accordance with the terms hereof. Any sums expended by Roane with respect to the EP and EPK shall be deemed advances to Artist recoupable from the royalties (except mechanical royalties, co-publishing royalties and merchandising royalties) payable to Artist pursuant to this Agreement. Any expense exceeding three thousand dollars ($3,000) shall be preapproved by Artist in accordance with the terms herein. The Parties agree that prior to the date of this Agreement, the sum total of all out-of-pocket expenses Roane has incurred, which are recoupable, totals approximately $17,563 as agreed upon between the Parties and no other out-of-pocket costs prior to this date shall be recoupable. The Parties also agree that Roane's legal expenses shall not be deemed recoupable expenses.

6.2    Notwithstanding anything to the contrary contained in this Agreement, it is specifically understood and agreed that no royalties shall be payable to Artist hereunder unless and until Roane has recouped all expenses incurred in connection with the EPK produced hereunder from the "net artist" royalties. After recoupment of such expenses in accordance with the preceding sentence, royalties shall be payable to Roane hereunder for all Records sold for

which royalties are payable, retroactively from the first such record sold, subject to the recoupment by Roane from such royalties of all advances paid to Artist hereunder.

6.3 *Loans And Advances*. Except as otherwise provided herein, Roane is not required to make any loans or advances hereunder to Artist or for Artist's account, nor to incur any expenses on Artist's behalf except those expressly outlined herein and as required to produce the EPK, but in the event at Artist's request, and Roane elects to do so, Artist shall repay or reimburse Roane therefor promptly.

6.4 *Invoices/Expense Reports*. Roane will deliver, or cause to be delivered, to Artist copies of all substantiating invoices, receipts, vouchers, and similar satisfactory documentary evidence of expenses. No recoupment shall be allowed for until such has been provided.

6.5 If Roane is unable to secure a Recording Agreement on or before the expiration of the Shopping Period, Artist is relieved from all expense reimbursement obligations. If Artist does not terminate this Agreement at the expiration of the Shopping Period and Roane proceeds with attempts to secure a Recording Agreement, Artist remains responsible for all expenses.

## 7. NAME AND LIKENESS; PUBLICITY

7.1 *Artist's Name, Image, and Likeness*. Roane shall have the right throughout the world during the term of this Agreement to use and permit others to use Artist's name (including any and all professional names used by Artist), photographs and other likenesses of Artist, and biographical material concerning Artist in connection with the exploitation of any or all of the EP and EPK for trade or otherwise in connection with this Agreement.

7.2 *Publicity*. During the term hereof, Roane shall have the exclusive right to advertise and publicize Roane as Artist's Producer and/or Artist's Representative.

## 8. OWNERSHIP

8.1 The results and proceeds of Artist's services during the Initial Term, subject to the allocations and/or designations as identified in Schedule A, shall, from the inception of its creation, be considered a work "made-for-hire" for Roane within the meaning of the U.S. Copyright Act. Accordingly, unless otherwise agreed upon in writing, Roane shall be exclusively entitled to, and shall own, all right, title, and interest in and to the results and proceeds of Artist's services during the Initial Term including, but not limited to, the exclusive ownership of any and all recordings and Masters, whether or not completed, and any and all sound recording copyrights therein and thereto, including all renewals and extensions thereof throughout the world, free of any claim whatsoever by Artist or by any persons deriving any rights or interests from or through Artist. If it is determined that a particular recording or Master does not so qualify, then such recording or Master, together with all rights therein (including the sound recording copyright), shall be deemed assigned and transferred to Roane by this Agreement.

## 9. CREDIT

9.1 All copies of the EP and Records embodying any Masters (in all configurations) produced by Roane will contain the following credit: Produced by Charles Martin Roane unless otherwise specified by Roane.

9.2 Artist shall instruct the Record Label to give Roane Executive Producer credit on Artist's

first album and right of first refusal respecting such credit for the second album (in all configurations) in substantially the following form: Executive Producer: Charles Martin Roane unless otherwise specified by Roane, provided the Masters produced by Roane are included in the release of such album.

9.3 Artist's inadvertent failure or any failure by the Record Label to accord such credits shall be a breach of this Agreement, Roane's sole right and remedy in that event shall be to notify Record Label of that failure, after which Artist shall work cooperatively with Roane to cause the Record Label to accord the appropriate credit to Roane on Records manufactured and/or on advertisements placed after the date Artist receives that notice.

## 10. COMPENSATION & ROYALTIES

10.1 Upon successfully securing a Recording Agreement, in accordance with standard industry practice, for any track produced by Roane, which is distributed by the Record Label, Roane shall be entitled to four (4) points PPD (or net profit equivalent in the event of a net profit deal) of the overall deal for a fourteen-point (14-point) deal and one-third (⅓) of the overall deal for any deal greater than fourteen (14) points in addition to a finder's fee in the amount of ten percent (10%) of the total deal. Any co-producer working under Roane shall be compensated by Roane and the compensation to any other third-party co-producer shall be mutually agreed upon by Artist and Roane.

## 11. REPRESENTATIONS AND WARRANTIES

11.1 Artist hereby warrants, represents, and agrees that: (a) Artist is at least eighteen (18) years of age; (b) has the right to enter into and fully perform this Agreement and to grant the rights herein; and (c) none of Artist's contribution to the EPK shall violate any law or infringe upon or violate the rights of any person.

11.2 Roane hereby warrants, represents, and agrees that: (a) Roane has the right to enter into and fully perform this Agreement; (b) none of Roane's contribution hereto shall violate any law or infringe upon or violate the rights of any person; and (c) Roane agrees not to do or attempt to do, or permit to be done, during or after the term hereof, any act which would or may be in derogation of or inconsistent with Artist's rights hereunder.

## 12. INDEMNIFICATION

12.1 Artist will at all times indemnify and hold harmless Roane and his successors, assigns, agents, distributors, and licensees, and the respective officers, directors, and employees from and against any and all claims, damages, liabilities, costs, and expenses, including legal expenses and reasonable counsel fees, arising out of a claim by a third-party which is inconsistent with any warranty, representation, or agreement made by Artist herein. Roane will notify Artist of any action commenced on such a claim.

## 13. INDEPENDENT CONTRACTOR

13.1 Nothing contained in this Agreement shall be deemed to create the relationship of employer-employee or any other relationship other than that of independent contractor between Artist and Roane. If Roane pays or is required to pay any taxes or other payments (*e.g.,* withholding, disability, etc.) inconsistent with Artist's status as an independent contractor, such payments shall be recoupable from any and all monies payable to Artist hereunder. Roane shall endeavor to notify Artist of any such payment or withholdings.

## 14. Formal Agreement

14.1 It is understood and agreed that, subsequent to the execution of this Agreement, at Roane's request, Artist shall execute a more formal Recording Agreement consistent with the terms hereof; provided that, unless and until such time, if ever, as a more formal agreement is entered into, this Agreement shall be binding and fully effective, shall be deemed to embody the entire agreement of the Parties, shall be deemed to supersede any and all prior or contemporaneous agreements and understandings, whether written or oral. The failure to incorporate the terms herein into the Recording Agreement shall be a breach of this Agreement.

## 15. Unique Services

15.1 Artist acknowledges that Artist's services hereunder as well as the rights and privileges granted to Roane under the terms hereof, are of a special, unique, and extraordinary character which gives them a peculiar value, and that, in the event of a breach by Artist of any term, condition, representation, warranty or covenant contained herein, Roane will be caused irreparable injury and damage. Artist expressly agrees that Roane shall be entitled to the remedy of injunction and other equitable relief to prevent or remedy a breach of this Agreement, which relief shall be in addition to any other rights or remedies, for damages or otherwise, which Roane may have.

## 16. Failure of Performance

16.1 Neither Party hereto shall be deemed to be in breach of any of its obligations hereunder unless and until the aggrieved Party has provided to the other Party specific written notice by certified or registered mail, return receipt requested, of the nature of such breach and such Party shall have failed to cure such breach within fifteen (15) calendar days after its receipt of such written notice.

## 17. Approvals and Consents

17.1 As to all matters, if any, which are stated herein to be determined by mutual agreement, or as to which any approval or consent is required, such agreement, approval, or consent shall not be unreasonably withheld. Artist's agreement, approval, or consent, whenever required, shall be deemed to have been given unless Artist notifies Roane otherwise within five (5) business days following the date of Roane's request therefor.

## 18. Notices

18.1 Any and all notices, demands, or other communications required or desired to be given hereunder by any Party shall be in writing and shall be validly given or made to another Party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand, or other communication is given by mail, such notice shall be conclusively deemed given seven (7) business days after deposit thereof in the United States mail addressed to the Party to whom such notice, demand, or other communication is to be given. Notices are to be addressed as follows:

    **If to Charles Roane:**
    7033 Boston Ave.

  North Beach, MD 20714

  **If to Haley Gosserand:**
  11306 North Jefferson St.
  Kansas City, MO 64155

### 19. MISCELLANEOUS

19.1 *Successors and Assigns*. Roane shall have the right to assign this Agreement or any of Roane's rights hereunder to any entity in which Roane has a controlling interest. This Agreement is personal to Artist, and Artist may not assign this Agreement or any portion thereof. Should Artist execute or cause to be executed a Recording Agreement with or through a loan out company or similar such entity, Artist shall cause the terms of this Agreement to be incorporated into the Recording Agreement. If Artist fails to cause these terms to be incorporated therein, such failure shall be deemed a material breach of this Agreement.

19.2 *Force Majeure*. Roane shall not be deemed in default hereunder if the performance of any of its obligations hereunder is delayed or become(s) impossible or commercially impractical, or if Roane or its agent(s) is/are hampered in the recording or manufacture, or any of Roane's normal business operations become commercially impractical, by reason of any force majeure event which Roane could not by reasonable diligence have avoided. Upon the happening of any such event, Roane in addition to any other rights or remedies he may have hereunder or otherwise, may elect, by notice to Artist, to suspend Roane's obligations under this Agreement for the period of time that the effects of any such force majeure event continue.

19.3 *Attorneys' Fees*. In the event of any litigation, arbitration, judicial reference, or other legal proceeding involving the Parties to this Agreement to enforce any provisions herein, to enforce any remedy available upon default under this Agreement, or seeking a declaration of the rights of either Party under this Agreement, the prevailing Party shall be entitled to recover from the other such attorneys' fees and costs as may be reasonably incurred, including the costs of reasonable investigation, preparation, and professional or expert consultation incurred by reason of such litigation, arbitration, judicial reference, or other legal proceeding.

19.4 *Governing Law*. This Agreement has been entered into in the State of Maryland. The validity, interpretation and legal effect of this Agreement is governed by the laws within such State. The Maryland courts only, will have jurisdiction over any controversies regarding this Agreement, and the Parties hereto consent to the jurisdiction of said courts. Notwithstanding the foregoing, legal action solely for injunctive relief may be brought in any court of competent jurisdiction.

### 20. INDEPENDENT COUNSEL

20.1 IN ENTERING INTO THIS AGREEMENT, ARTIST AND ROANE EACH REPRESENT THAT THEY HAVE RELIED UPON LEGAL ADVICE OF AN ATTORNEY. ARTIST AND ROANE AND THEIR RESPECTIVE COUNSEL HAVE REVIEWED THIS AGREEMENT AND HAVE HAD THE OPPORTUNITY TO NEGOTIATE THE TERMS HEREOF, INCLUDING THE WAIVERS AND INDEMNITIES CONTAINED HEREIN.

BASED ON SAID REVIEW AND CONSULTATION, THE PARTIES AGREE WITH EACH AND EVERY TERM CONTAINED IN THIS AGREEMENT. BASED ON THE FOREGOING, THE PARTIES AGREE THAT THE RULE OF CONSTRUCTION THAT A CONTRACT BE CONSTRUED AGAINST THE DRAFTER, IF ANY, SHALL NOT BE APPLIED IN THE INTERPRETATION AND CONSTRUCTION OF THIS AGREEMENT.

| *Charles Roane* | 12/12/2022 | *Haley Gosserand* | 12/09/2022 |
|---|---|---|---|
| Charles Roane | (Date) | Haley Gosserand | (Date) |

**SCHEDULE A**

1. Maybe Someday
   *full ownership

2. World's Best Breakup Song
   *full ownership

3. I said it first
   *full ownership

4. Camera Roll
   *full ownership

5. It's not me it's you
   *Split ownership