# EXHIBIT D



1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642.5470

June 4, 2025

**CEASE AND DESIST**

**Via Email and Priority Mail**
Henry Hoberman, General Counsel
Lifetime Entertainment Services, LLC
c/o The Corporation Trust Company
1209 Orange St.
Wilmington, DE, 19801

FRE 408: FOR NEGOTIATION AND SETTLEMENT PURPOSES ONLY

**Re: Unlawful Use and Exploitation of Televised Content Featuring Haley Gosserand - Immediate Action Required**

To Whom It May Concern:

This firm represents Charles Roane ("Roane"), the exclusive producer and representative of Haley Gosserand ("Haley") pursuant to a fully executed Production and Management Agreement dated December 9, 2022, as amended (the "Agreement"). Despite the clear written terms of the Second Amendment, which extended the Agreement through **December 31, 2026**, Haley has recently taken the position (as of 3:34 PM today) that the Agreement has expired. As you can see from the executed amendment, this assertion is plainly contradicted by the binding contractual language. Accordingly, the Agreement remains in full force and effect,[1] and any unauthorized placement or use of Haley's televised appearances constitutes, *inter alia*, inducement of breach of contract for which your entity may be held liable.

**UNAUTHORIZED CONDUCT**

It has come to our attention that your entity has facilitated the distribution, broadcast, streaming, or public placement of televised content featuring Haley without Roane's required advance written consent. This constitutes a material violation of Roane's exclusive contractual rights and exposes your entity to significant legal exposure.

Section 2.1(c) of the Agreement provides:

"Roane shall approve all televised musical performances."

Section 4.3 reinforces that ***any and all televised appearances must be approved by Roane***.

---

[1] Even if Haley's termination was deemed effective as of today, your entity remains liable for inducing the breach of a valid and binding agreement as it appears that her breach is due to her unauthorized appearance and unlawful agreement with Lifetime.

June 4, 2025
Page 2 of 3

**LEGAL VIOLATIONS**

Your conduct constitutes the following violations:

1. Tortious Interference with Contractual Relations;
2. Inducement of Breach of Contract;
3. Violation of Rights of Publicity, through the unauthorized commercial use of Haley name, image, likeness, and persona; and
4. Unfair Competition and Unjust Enrichment

**IMMEDIATE DEMANDS**

Accordingly, you are hereby directed to:

1. **Immediately cease and desist** from any further use, distribution, promotion, or exploitation of any televised content featuring Haley Gosserand;

2. **Provide a complete written response within *five (5) business days*** that includes:
   - The date your entity became aware of Roane's exclusive rights;
   - A list of all communications or agreements with Haley or third parties regarding her appearance(s);
   - The names and roles of all individuals and entities involved in casting, producing, contracting, or distributing the content;
   - Copies of any contracts, emails, text messages, or related materials; and
   - A list of all platforms, air dates, or channels where Haley's appearance has been or is scheduled to be made available

3. **Preserve all records and communications** concerning Haley's appearance and any related arrangements. A formal litigation hold notice is enclosed herewith.

**PRE-LITIGATION COOPERATION**

Your full and immediate disclosure is necessary to assess the scope of your entity's participation, determine the chain of liability, and evaluate potential claims against all involved parties. Continued nondisclosure will be treated as willful misconduct and will significantly increase your exposure to damages, including punitive and statutory remedies.

If your entity provides full cooperation and ceases further dissemination of Haley's appearances, Roane may consider resolving this matter without the need for formal legal action. This opportunity for informal resolution will not remain open indefinitely.

This offer is made without prejudice to Roane's rights and does not constitute a waiver of any legal remedies. Failure to comply with the above demands will compel Roane to pursue formal injunctive and monetary relief, including claims for willful violation of exclusive rights, actual damages, statutory damages, and attorneys' fees.

June 4, 2025
Page 3 of 3

**RESERVATION OF RIGHTS**

Roane expressly reserves all legal and equitable rights and remedies, including the pursuit of injunctive relief, actual and statutory damages, and attorneys' fees in any court of competent jurisdiction. Continued unauthorized use of Haley's televised appearances after receipt of this letter will be deemed willful, substantially increasing your organization's exposure.

Thank you for your time and prompt attention regarding this matter.

Regards,

Dayna C. Cooper


Enclosure(s): Litigation Hold Notice
Production and Management Agreement (and Amendment)

cc: David Seiden (David.Seiden@aenetworks.com)
    Christian Palmieri (Christian.Palmieri@aenetworks.com)
    Haley Gosserand ℅ CorderoLaw julian@mycorderolaw.com

PRODUCTION AND MANAGEMENT AGREEMENT

This Production and Management Agreement ("Agreement") dated as of December 9, 2022, by and between Haley Gosserand (hereinafter referred to as "Artist") and Charles Roane (hereinafter referred to as "Roane") (collectively the "Parties" and individually a "Party"), is being entered into in consideration of the following mutual covenants and benefits:

### 1. SERVICES; SCOPE

1.1 **Shopping**. Artist hereby retains Roane as her producer and artist representative in connection with the presentation of Artist to record companies (each, a "Record Label") for purposes of obtaining an exclusive artist recording agreement (the "Recording Agreement") for the benefit of Artist and Roane who will be granted, among other things, the right to distribute audio and audio-visual records ("Records") embodying master recordings ("Masters") of Artist's performances. It is the essence of this Agreement that during the Initial Term hereof, Roane and his representatives shall be exclusively entitled to present Artist to Record Labels and to negotiate for purposes of obtaining a Recording Agreement. Artist agrees to fully cooperate to the best of Artist's ability with Roane in securing the Recording Agreement (including, without limitation, to perform "live" at Roane's expense for showcase purposes as Roane may reasonably request, and Roane shall give due consideration to Artist's preexisting employment obligations in scheduling such showcases) and in satisfying all terms required thereunder. Roane agrees to consult with Artist with respect to the terms of each prospective Recording Agreement. Under the advice and counsel of Roane, Artist shall have sole discretion with regards to entering into a Recording Agreement.

1.2 **Electronic Press Kit**. Roane shall produce, record, and mix an extended play record ("EP") (consisting of up to 15 Compositions) and electronic press kit ("EPK") embodying the performances of Artist. A "Composition" shall mean a single musical composition, irrespective of length, including all spoken words and bridging passages and including a medley. Recordings of more than one arrangement or version of the same Composition, reproduced on the same Record, shall be considered, collectively, a recording of one Composition for all purposes under this Agreement.

1.3 Further, Roane shall pay for all costs associated with the production of the EP and EPK.

1.4 **Artist Management**. Roane hereby agrees during the term hereof to advise, counsel, and direct Artist in connection with all matters relating to Artist's professional career in all aspects of the music industry, including without limitation, (a) in the selection of musical material; (b) with respect to the adoption of proper formats for the presentation of Artist's musical talents and in the determination of the proper style, mood, setting, and characterization in keeping with Artist's musical talents; and (c) in the selection of musical and other talent to assist, accompany, or embellish Artist's musical presentation. The Parties hereby acknowledge that while Roane will be taking on some managerial responsibilities, Roane is not Artist's manager, but shall act in such a capacity until such a time that a manager is retained. Under the advice and counsel of Roane, Artist shall hire a manager to manage her musical career. Notwithstanding, to the extent that Roane disagrees with Artist's decision relating to her music manager such that this Agreement shall be terminated, Artist shall be responsible to Roane for all expenses in accordance with section 6 herein.

1.5 **Non-exclusive**. Roane's services hereunder are non-exclusive and Roane shall at all times be free to perform the same or similar services for others, as well as to engage in any and all

other business activities. Specifically, it is acknowledged and agreed that Roane shall have the right to act as personal manager or producer for any other musicians, vocalists, or other persons whether or not they may be affiliated with Artist and that no advice and counsel which Roane may render to such individuals in connection with Roane's services to them shall be deemed to be a breach of this Agreement or of Roane's obligations and duties hereunder. Roane shall only be required to render reasonable services as provided for herein.

1.6 *No Guarantee*. Roane has not made and does not hereby make, any representation or warranty with respect to securing a Recording Agreement.

## 2. AUTHORITY OF MANAGER

2.1 Roane is hereby authorized and empowered for Artist and on Artist's behalf, to do the following, upon Artist's written approval (text or email to suffice) which shall not be unreasonably withheld:

(a) Roane shall approve and authorize any and all publicity and advertising including but not limited to social media and print media, except that any brand or endorsement deals may be entered into at Artist's sole discretion.

(b) Roane shall approve and authorize any and all use of Artist's name (including Artist's professional name), photograph, likeness, voice, and other identification for purposes of promotion and publicity.

(c) Roane shall approve all televised musical performances.

## 3. TERM AND TERMINATION

3.1 The "Development Term" shall begin on the date set forth above and shall continue through February 28, 2022. The "Shopping Period" shall commence immediately following the Development Term and shall continue until the earlier of (a) two years or (b) upon the date of execution of the Recording Agreement. The "Initial Term" of this Agreement shall begin on the date set forth above and shall terminate following the expiration of the Shopping Period.

3.2 In no event shall the Artist's commitment under this Agreement exceed the maximum time allowable by law, provided that if any provision of this Agreement is determined invalid or unenforceable by a court or then-legally constituted body with jurisdiction to make such determination, the remainder hereof shall remain in full force and effect.

3.3 *Termination During Initial Term*. If during the Initial Term, Artist desires to terminate this Agreement, Artist may do so by providing thirty (30) calendar days written notice. In any such event, Artist shall reimburse Roane for all out-of-pocket costs associated with the performance of this Agreement

3.4 *Termination After Expiration of Shopping Period.* If Roane fails to secure a Recording Agreement on or before the end of the Initial Term, upon expiration of the Initial Term, Artist may terminate this Agreement by giving Roane thirty (30) calendar days written notice. On receipt by Roane of the termination notice, the terms of this Agreement will end and all Parties will be deemed to have fulfilled all of their obligations hereunder.

## 4. ARTIST'S RESTRICTIONS

4.1 Artist shall not enter into any agreement or make any commitment which would or may

interfere with Roane's performance of any of the terms or provisions of this Agreement.

4.2   Artist shall not produce or perform any selection or portion of any selection produced hereunder for the purpose of Compositions or sound recordings for any person other than Roane or without Roane's approval during the term of this Agreement.

4.3   For avoidance of doubt, Artist shall be permitted to engage in any third-party agreement with respect to Artist's social media without the consent or involvement of Roane. This may include brand and endorsement deals. Artist shall also be permitted to agree to perform at any performance and make any public appearances at Artist's sole discretion except that all televised appearance shall be approved by Roane.

4.4   For avoidance of doubt, Artist shall be permitted to work with other music producers or recording artists. Roane, however, will be the only one permitted to shop Artist as listed in section 1.1.

## 5.   RECORDING COMMITMENT

5.1   During the Development Term, Artist shall perform up to fifteen (15) Compositions selected and/or produced by Roane and Artist to include in the EP. If any EP Composition is embodied on a Record released by the Record Label, it shall be deemed a Master hereunder.

## 6.   EXPENSES; RECORDING COSTS; RECOUPMENT

6.1   Roane shall be entitled to recoup his out-of-pocket costs, whether such costs are incurred before (to the extent identified below in this paragraph) or after the date hereof, paid in connection with the presentation of Artist's material and the entering into of a Recording Agreement (including, without limitation, recording and production costs for the EPK, publicity photos and materials, rehearsal and "showcasing" expenses, travel, etc.) from any and all monies payable under the Recording Agreement. All travel expenses incurred by Roane in connection with his services on Artist's behalf shall be reasonable in light of Artist's stature in the entertainment industry, but Roane shall at all times be entitled to utilize the same type, style, and class of transportation and accommodations as Artist. In the event Artist requests Roane's presence outside of the Maryland metropolitan area, Artist agrees that Artist will reimburse Roane's expenses, including reasonable traveling expenses, reasonable living accommodations, meals and other such expenses, in accordance with the terms hereof. Any sums expended by Roane with respect to the EP and EPK shall be deemed advances to Artist recoupable from the royalties (except mechanical royalties, co-publishing royalties and merchandising royalties) payable to Artist pursuant to this Agreement. Any expense exceeding three thousand dollars ($3,000) shall be preapproved by Artist in accordance with the terms herein. The Parties agree that prior to the date of this Agreement, the sum total of all out-of-pocket expenses Roane has incurred, which are recoupable, totals approximately $17,563 as agreed upon between the Parties and no other out-of-pocket costs prior to this date shall be recoupable. The Parties also agree that Roane's legal expenses shall not be deemed recoupable expenses.

6.2   Notwithstanding anything to the contrary contained in this Agreement, it is specifically understood and agreed that no royalties shall be payable to Artist hereunder unless and until Roane has recouped all expenses incurred in connection with the EPK produced hereunder from the "net artist" royalties. After recoupment of such expenses in accordance with the preceding sentence, royalties shall be payable to Roane hereunder for all Records sold for

which royalties are payable, retroactively from the first such record sold, subject to the recoupment by Roane from such royalties of all advances paid to Artist hereunder.

6.3 *Loans And Advances*. Except as otherwise provided herein, Roane is not required to make any loans or advances hereunder to Artist or for Artist's account, nor to incur any expenses on Artist's behalf except those expressly outlined herein and as required to produce the EPK, but in the event at Artist's request, and Roane elects to do so, Artist shall repay or reimburse Roane therefor promptly.

6.4 *Invoices/Expense Reports*. Roane will deliver, or cause to be delivered, to Artist copies of all substantiating invoices, receipts, vouchers, and similar satisfactory documentary evidence of expenses. No recoupment shall be allowed for until such has been provided.

6.5 If Roane is unable to secure a Recording Agreement on or before the expiration of the Shopping Period, Artist is relieved from all expense reimbursement obligations. If Artist does not terminate this Agreement at the expiration of the Shopping Period and Roane proceeds with attempts to secure a Recording Agreement, Artist remains responsible for all expenses.

## 7. NAME AND LIKENESS; PUBLICITY

7.1 *Artist's Name, Image, and Likeness*. Roane shall have the right throughout the world during the term of this Agreement to use and permit others to use Artist's name (including any and all professional names used by Artist), photographs and other likenesses of Artist, and biographical material concerning Artist in connection with the exploitation of any or all of the EP and EPK for trade or otherwise in connection with this Agreement.

7.2 *Publicity*. During the term hereof, Roane shall have the exclusive right to advertise and publicize Roane as Artist's Producer and/or Artist's Representative.

## 8. OWNERSHIP

8.1 The results and proceeds of Artist's services during the Initial Term, subject to the allocations and/or designations as identified in Schedule A, shall, from the inception of its creation, be considered a work "made-for-hire" for Roane within the meaning of the U.S. Copyright Act. Accordingly, unless otherwise agreed upon in writing, Roane shall be exclusively entitled to, and shall own, all right, title, and interest in and to the results and proceeds of Artist's services during the Initial Term including, but not limited to, the exclusive ownership of any and all recordings and Masters, whether or not completed, and any and all sound recording copyrights therein and thereto, including all renewals and extensions thereof throughout the world, free of any claim whatsoever by Artist or by any persons deriving any rights or interests from or through Artist. If it is determined that a particular recording or Master does not so qualify, then such recording or Master, together with all rights therein (including the sound recording copyright), shall be deemed assigned and transferred to Roane by this Agreement.

## 9. CREDIT

9.1 All copies of the EP and Records embodying any Masters (in all configurations) produced by Roane will contain the following credit: Produced by Charles Martin Roane unless otherwise specified by Roane.

9.2 Artist shall instruct the Record Label to give Roane Executive Producer credit on Artist's

    first album and right of first refusal respecting such credit for the second album (in all configurations) in substantially the following form: Executive Producer: Charles Martin Roane unless otherwise specified by Roane, provided the Masters produced by Roane are included in the release of such album.

9.3 Artist's inadvertent failure or any failure by the Record Label to accord such credits shall be a breach of this Agreement, Roane's sole right and remedy in that event shall be to notify Record Label of that failure, after which Artist shall work cooperatively with Roane to cause the Record Label to accord the appropriate credit to Roane on Records manufactured and/or on advertisements placed after the date Artist receives that notice.

## 10. COMPENSATION & ROYALTIES

10.1 Upon successfully securing a Recording Agreement, in accordance with standard industry practice, for any track produced by Roane, which is distributed by the Record Label, Roane shall be entitled to four (4) points PPD (or net profit equivalent in the event of a net profit deal) of the overall deal for a fourteen-point (14-point) deal and one-third ($\frac{1}{3}$) of the overall deal for any deal greater than fourteen (14) points in addition to a finder's fee in the amount of ten percent (10%) of the total deal. Any co-producer working under Roane shall be compensated by Roane and the compensation to any other third-party co-producer shall be mutually agreed upon by Artist and Roane.

## 11. REPRESENTATIONS AND WARRANTIES

11.1 Artist hereby warrants, represents, and agrees that: (a) Artist is at least eighteen (18) years of age; (b) has the right to enter into and fully perform this Agreement and to grant the rights herein; and (c) none of Artist's contribution to the EPK shall violate any law or infringe upon or violate the rights of any person.

11.2 Roane hereby warrants, represents, and agrees that: (a) Roane has the right to enter into and fully perform this Agreement; (b) none of Roane's contribution hereto shall violate any law or infringe upon or violate the rights of any person; and (c) Roane agrees not to do or attempt to do, or permit to be done, during or after the term hereof, any act which would or may be in derogation of or inconsistent with Artist's rights hereunder.

## 12. INDEMNIFICATION

12.1 Artist will at all times indemnify and hold harmless Roane and his successors, assigns, agents, distributors, and licensees, and the respective officers, directors, and employees from and against any and all claims, damages, liabilities, costs, and expenses, including legal expenses and reasonable counsel fees, arising out of a claim by a third-party which is inconsistent with any warranty, representation, or agreement made by Artist herein. Roane will notify Artist of any action commenced on such a claim.

## 13. INDEPENDENT CONTRACTOR

13.1 Nothing contained in this Agreement shall be deemed to create the relationship of employer-employee or any other relationship other than that of independent contractor between Artist and Roane. If Roane pays or is required to pay any taxes or other payments (*e.g.,* withholding, disability, etc.) inconsistent with Artist's status as an independent contractor, such payments shall be recoupable from any and all monies payable to Artist hereunder. Roane shall endeavor to notify Artist of any such payment or withholdings.

### 14. FORMAL AGREEMENT

14.1 It is understood and agreed that, subsequent to the execution of this Agreement, at Roane's request, Artist shall execute a more formal Recording Agreement consistent with the terms hereof; provided that, unless and until such time, if ever, as a more formal agreement is entered into, this Agreement shall be binding and fully effective, shall be deemed to embody the entire agreement of the Parties, shall be deemed to supersede any and all prior or contemporaneous agreements and understandings, whether written or oral. The failure to incorporate the terms herein into the Recording Agreement shall be a breach of this Agreement.

### 15. UNIQUE SERVICES

15.1 Artist acknowledges that Artist's services hereunder as well as the rights and privileges granted to Roane under the terms hereof, are of a special, unique, and extraordinary character which gives them a peculiar value, and that, in the event of a breach by Artist of any term, condition, representation, warranty or covenant contained herein, Roane will be caused irreparable injury and damage. Artist expressly agrees that Roane shall be entitled to the remedy of injunction and other equitable relief to prevent or remedy a breach of this Agreement, which relief shall be in addition to any other rights or remedies, for damages or otherwise, which Roane may have.

### 16. FAILURE OF PERFORMANCE

16.1 Neither Party hereto shall be deemed to be in breach of any of its obligations hereunder unless and until the aggrieved Party has provided to the other Party specific written notice by certified or registered mail, return receipt requested, of the nature of such breach and such Party shall have failed to cure such breach within fifteen (15) calendar days after its receipt of such written notice.

### 17. APPROVALS AND CONSENTS

17.1 As to all matters, if any, which are stated herein to be determined by mutual agreement, or as to which any approval or consent is required, such agreement, approval, or consent shall not be unreasonably withheld. Artist's agreement, approval, or consent, whenever required, shall be deemed to have been given unless Artist notifies Roane otherwise within five (5) business days following the date of Roane's request therefor.

### 18. NOTICES

18.1 Any and all notices, demands, or other communications required or desired to be given hereunder by any Party shall be in writing and shall be validly given or made to another Party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand, or other communication is given by mail, such notice shall be conclusively deemed given seven (7) business days after deposit thereof in the United States mail addressed to the Party to whom such notice, demand, or other communication is to be given. Notices are to be addressed as follows:

**If to Charles Roane:**
7033 Boston Ave.

    North Beach, MD 20714

    **If to Haley Gosserand:**
    11306 North Jefferson St.
    Kansas City, MO 64155

## 19. MISCELLANEOUS

19.1 *Successors and Assigns*. Roane shall have the right to assign this Agreement or any of Roane's rights hereunder to any entity in which Roane has a controlling interest. This Agreement is personal to Artist, and Artist may not assign this Agreement or any portion thereof. Should Artist execute or cause to be executed a Recording Agreement with or through a loan out company or similar such entity, Artist shall cause the terms of this Agreement to be incorporated into the Recording Agreement. If Artist fails to cause these terms to be incorporated therein, such failure shall be deemed a material breach of this Agreement.

19.2 *Force Majeure*. Roane shall not be deemed in default hereunder if the performance of any of its obligations hereunder is delayed or become(s) impossible or commercially impractical, or if Roane or its agent(s) is/are hampered in the recording or manufacture, or any of Roane's normal business operations become commercially impractical, by reason of any force majeure event which Roane could not by reasonable diligence have avoided. Upon the happening of any such event, Roane in addition to any other rights or remedies he may have hereunder or otherwise, may elect, by notice to Artist, to suspend Roane's obligations under this Agreement for the period of time that the effects of any such force majeure event continue.

19.3 *Attorneys' Fees*. In the event of any litigation, arbitration, judicial reference, or other legal proceeding involving the Parties to this Agreement to enforce any provisions herein, to enforce any remedy available upon default under this Agreement, or seeking a declaration of the rights of either Party under this Agreement, the prevailing Party shall be entitled to recover from the other such attorneys' fees and costs as may be reasonably incurred, including the costs of reasonable investigation, preparation, and professional or expert consultation incurred by reason of such litigation, arbitration, judicial reference, or other legal proceeding.

19.4 *Governing Law*. This Agreement has been entered into in the State of Maryland. The validity, interpretation and legal effect of this Agreement is governed by the laws within such State. The Maryland courts only, will have jurisdiction over any controversies regarding this Agreement, and the Parties hereto consent to the jurisdiction of said courts. Notwithstanding the foregoing, legal action solely for injunctive relief may be brought in any court of competent jurisdiction.

## 20. INDEPENDENT COUNSEL

20.1 IN ENTERING INTO THIS AGREEMENT, ARTIST AND ROANE EACH REPRESENT THAT THEY HAVE RELIED UPON LEGAL ADVICE OF AN ATTORNEY. ARTIST AND ROANE AND THEIR RESPECTIVE COUNSEL HAVE REVIEWED THIS AGREEMENT AND HAVE HAD THE OPPORTUNITY TO NEGOTIATE THE TERMS HEREOF, INCLUDING THE WAIVERS AND INDEMNITIES CONTAINED HEREIN.

BASED ON SAID REVIEW AND CONSULTATION, THE PARTIES AGREE WITH EACH AND EVERY TERM CONTAINED IN THIS AGREEMENT. BASED ON THE FOREGOING, THE PARTIES AGREE THAT THE RULE OF CONSTRUCTION THAT A CONTRACT BE CONSTRUED AGAINST THE DRAFTER, IF ANY, SHALL NOT BE APPLIED IN THE INTERPRETATION AND CONSTRUCTION OF THIS AGREEMENT.

_Charles Roane_  12/12/2022       _Haley Gosserand_  12/09/2022
Charles Roane                (Date)    Haley Gosserand                (Date)

**SCHEDULE A**

1. Maybe Someday
   *full ownership

2. World's Best Breakup Song
   *full ownership

3. I said it first
   *full ownership

4. Camera Roll
   *full ownership

5. It's not me it's you
   *Split ownership

# FIRST AMENDMENT
## to the
## Production and Management Agreement

This First Amendment to the Production and Management Agreement ("First Amendment") made by and between Haley Gosserand ("Gosserand") and Charles Roane ("Roane") (collectively referred to herein as the "Parties" or individually as a "Party") shall be effective as of February 28, 2024 ("Effective Date").

The Parties agree to amend the Production and Management Agreement between Gosserand and Roane dated December 9, 2022 concerning the provision of production and management services of Roane to Gosserand (the "Agreement").

The following terms of the Agreement are amended as follows:

1. **The Shopping Period of the Agreement shall be extended to run until the earlier of:**

    (a) February 28, 2026; or

    (b) upon the date of execution of the Recording Agreement.

All other portions of the terms and conditions of the Agreement shall remain in full force and effect.

This First Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this First Amendment as of the Effective Date provided above.

_____  
Charles Roane

*Haley Gosserand* (signature)  
Haley Gosserand

# SECIOND AMENDMENT
## to the
## Production and Management Agreement

This Second Amendment to the Production and Management Agreement ("Second Amendment") made by and between Haley Gosserand ("Gosserand") and Charles Roane ("Roane") (collectively referred to herein as the "Parties" or individually as a "Party") shall be effective as of July 15, 2024 ("Effective Date").

WHEREAS, the Parties entered into an agreement regarding production and management services dated December 9, 2022 (the "Production and Management Agreement");

WHEREAS, the Parties amended the Production and Management Agreement effective February 28, 2024 ("First Amendment");

WHEREAS, Gosserand has recently advised Roane that she has entered into an agreement for participation in a reality television show necessitating a further extension of the "Production and Management Agreement; and

WHEREAS, the Parties hereby agree to further extend Roane's performance date to avoid any conflicts presented by the filming of the reality television show and ensure Roane's ability to perform his obligations thereunder.

The following terms of the Agreement are amended as follows:

1. **The Shopping Period of the Agreement shall be extended to:**

    (a) December 31, 2026.

This Second Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this First Amendment as of the Effective Date provided above.


_____          _____
Charles Roane                         Haley Gosserand



1 Olympic Place, Suite 900<br>Towson, MD 21204<br>(202) 642.5470

June 4, 2025

**<u>VIA EMAIL - PRIORITY MAIL – SIGNATURE CONFIRMATION</u>**
Henry Hoberman, General Counsel
Lifetime Entertainment Services, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE, 19801

    Re: Litigation Hold – Preservation of Evidence
      In the Matter of: *Roane v. Gosserand*

Dear Mr. Hoberman:

  This firm represents the legal interest of Charles Roane ("Client"). As parties to the referenced litigation, we must take reasonable steps to identify and preserve potentially relevant information, including both hard copy documents and electronically-stored information (ESI), that is in our possession, custody, or control. In addition to taking the steps necessary to satisfy our Client's preservation obligations, we are also taking additional steps to secure the preservation of information that is outside of our possession, custody, or control, yet may be relevant to our Client's claims or defenses.

  <u>**Documents and Electronically Stored Information**</u>

  As part of this process, you must take affirmative steps to preserve, and suspend any deletion, overwriting, modification, or other destruction of all relevant electronic documents and data under your control. "Documents" is to be interpreted broadly to include all paper and electronic materials. Documents may be handwritten, notes, memoranda, minutes, electronic documents (including but not limited to e-mail), recordings (including voicemail messages), photographs, reports, presentations, telephone logs, calendars, and other business records. Relevant documents may be found on a work computer, home computer, portable media (including tablets), cell phones and smartphones, and any other location. Documents may also include physical materials or items. Drafts of documents as well as duplicates and near duplicates of documents should also be preserved as though they were originals. The foregoing is intended to be illustrative of categories of documents and is not intended to be limiting in nature.

  All digital or analog electronic files, stored in machine-readable format on magnetic, optical, or other storage media, including the hard drives or storage drives used by Lifetime Entertainment Services, LLC ("Lifetime") computers and their backup media (*e.g.*, other hard drives, DVDs, CDs, USBs, servers, etc.) or otherwise, whether such files have been reduced to paper printouts or not. Lifetime must preserve all emails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and

revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management, and personal information management (PIM) software such as Microsoft Outlook); all data created with the use of cell phones and smartphones, (such as voicemails, call logs, SMS, and text messages); all data created with the use of document management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches and "cookies" files generated at the workstation of each relevant employee and/or agent and on any and all accessible backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voicemail. Further, Lifetime must preserve any log or logs of network use by relevant employees or otherwise, whether kept in paper or electronic form, all copies of accessible backup tapes and the software necessary to reconstruct the electronic data on those tapes. If you are unsure about whether certain documents and data are relevant, you should preserve them.

It is a violation of law to fail to retain these documents and data, whether intentionally or accidentally, or ignore the directive of this notice. Failure to obey this notice may result in severe penalties. This notice is effective immediately and your compliance with it is mandatory.

**Company Policies; Duration of Hold**

Even if in the ordinary course of business to date, such destruction of documents or media has been a standard business practice such that no malicious intent or knowing destruction can be inferred, such procedures must be suspended at once to preserve any documents or files that (a) may be relevant, (b) are reasonably likely to lead to the discovery of admissible evidence in this dispute, and (c) are reasonably likely to be requested during discovery. This notice and the directions it contains supersedes any other litigation hold policies, memoranda, or instructions. You must continue to apply the directions contained in this notice until you receive written notice that it is no longer in effect.

**Potentially Relevant Documents That You Must Preserve**

You are required to retain and respond within five (5) business days, providing all potentially relevant documents, including but not limited to the following:

1. The date your organization became aware of Roane's exclusive rights;
2. A list of all communications or agreements with Haley or third parties regarding her appearance;
3. The names and roles of all individuals and entities involved in casting, producing, contracting, or distributing the content;
4. Copies of any contracts, emails, text messages, or related materials;
5. A list of all platforms, air dates, or channels where Haley's appearance has been or is scheduled to be made available.

**Forward this Notice to Individuals with Relevant Information**

If any individuals working with you or under your supervision, direction, or control are, or have been, involved with creating, preparing, storing, or working with documents and other data covered by this notice, or any of the subject matter of the potential litigation, you must forward a copy of this notice to them and ensure that they comply with it.

Additionally, if you know of any other current or former employees or board members who may have relevant materials but did not receive a copy of this notice, please forward the names of those individuals to me.

**Questions About This Notice**

You received this notice because you may possess information relevant to the potential litigation. If you have any questions about this notice or the scope of your responsibility to preserve paper documents, physical items, and electronic documents and data, please contact me by phone at (202) 642.5470 or by email at Dayna@CooperLegalSolutions.com.

Please sign, date, and return a copy of this notice to me acknowledging that you have read it and understand the preservation obligations it imposes on you.

Sincerely yours,

Dayna C. Cooper, Esq.

I acknowledge receipt of this Notice and I understand that I have an affirmative responsibility to obey the directions it sets out.

_____
Name (Print):
Title:
Date:

