# Exhibit 2

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROBERT BROWN and THE ESTATE OF
BOBBI KRISTINA BROWN,

                Plaintiffs,              New York, N.Y.

           v.                            17 Civ. 6824 (at)

TV ONE, LLC, SWIRL RECORDING &
FILM, INC., D/B/A SWIRL FILMS,
INC., TRACEY BAKER-SIMMONS,
WANDA SHELLEY AND B2
ENTERTAINMENT, LLC, AND
SIMMONS SHELLEY ENTERTAINMENT,
LLC,

                Defendants.
------------------------------x
                                         October 5, 2017
                                         12:40 p.m.
Before:

                   HON. ANALISA TORRES,

                                         District Judge



                         APPEARANCES


BROWN & ROSEN, LLC
     Attorneys for Plaintiffs
BY:  CHRISTOPHER L. BROWN

DAVIS WRIGHT TREMAINE, LLP (NYC)
     Attorneys for Defendants
BY:  JAMES E. ROSENFELD
```

1               (Case called)
2               THE COURT:  Good afternoon.  We are here in the matter
3    of Brown versus TV One.  Would you make your appearances,
4    please?
5               MR. BROWN:  Christopher Brown on behalf of plaintiffs,
6    your Honor.
7               MR. ROSENFELD:  Jim Rosenfeld, Davis Wright Tremaine
8    for TV One, your Honor.  I am here with my client Patricia
9    Fitzhugh who is here for TV One.
10              THE COURT:  You may be seated.
11              There are two plaintiffs, Robert Brown, a recording
12   artist, and the estate of his deceased daughter Bobbi Kristina
13   Brown.  Defendants, companies and individuals in the television
14   and entertainment industry, have produced, promoted, and
15   planned to air a film about Bobbi Kristina's life.  The film
16   appears to include events described in Mr. Brown's 2016
17   autobiography "Every Little Step."  Plaintiffs move for
18   preliminary injunctive relief alleging that defendants'
19   promotion and distribution of the film (1) violates their
20   respective rights of publicity; (2) violates the Lanham Act;
21   (3) defames Robert Brown; and (4) constitutes a breach of
22   contract between Robert Brown and defendants Tracey
23   Baker-Simmons, Wanda Shelley and B2 Entertainment.  Plaintiffs
24   seek an order enjoining defendants from promoting or
25   distributing the film which is set to air on October 8th.

1        Would counsel for plaintiff like to be heard on the
2   preliminary injunction?
3        MR. BROWN:  Yes, your Honor.
4        THE COURT:  Go ahead.
5        MR. BROWN:  At this time, your Honor, irrespective of
6   plaintiffs' claims associated with rights of publicity in
7   addition to the Lanham Act claims, just based on the contract
8   claim alone the plaintiffs are entitled to an injunction.  One,
9   the plaintiffs have, Mr. Brown has in fact met his obligations
10  and has performed the contract.  The contract contains a
11  confidentiality clause and in regards to an injunction, it has
12  been held that the release of confidential information warrants
13  an injunction and that, your Honor, I refer your Honor to the
14  case of Hospital Staffing v. Reyes, 736 F.Supp.2d Edition.
15        Now, all of the defendants, outside of TV One, have
16  had an opportunity to appear in this action.  They have not.
17  They have had the chance to come in this Court and allege that
18  they have not breached this contract.  They have not.
19  Irrespective of any rights associated with publicity and a
20  Lanham Act violation, we believe an injunction is warranted
21  because we believe this contract as been breached and we
22  believe that confidential information will be released not just
23  pursuant to this contract but also possibly in regards to
24  information that was given to Ms. Shelley that was associated
25  with the conservatorship that I was actually counsel for in

1   Georgia.  Ms. Shelley may have obtained confidential
2   information associated with her deposition that was to occur in
3   that particular matter.
4           Now, as we get to the Lanham Act and publicity claim,
5   obviously that has been well briefed, the issues are very
6   clear.  I would just like to point out that neither one of
7   these affirmative defenses -- excuse me, the First Amendment
8   affirmative defense is absolute.  The defendants have to
9   establish that they fit within this newsworthy exception or
10  that this is freedom of speech and they have to establish that
11  they have not misled the public as to the source and to the
12  content of this particular film.  They had the opportunity to
13  give this film to this Court, they could have did it in camera
14  and did it under seal.  This isn't at the procedural stage,
15  this was to be an evidentiary hearing.  We have established it
16  is a very clear that they are using the persona, the life of
17  Bobby Kristina who was murdered in 2015, and Robert Brown.
18  They have to establish that this film, under *Porco*, is not this
19  embellished dramatization which this Court is aware of now and,
20  in February 2017, the Third Department actually indicated
21  exactly what we need to do in regards to biographies.  None of
22  the cases actually cited by either party in this case addresses
23  the facts as we see them here.  The Rogers test may not even be
24  applicable.  None of the cases cited deal with a contract.
25  None of the cases cited are post the new *Porco* decision in

|   |   |
|---|---|
| 1 | 2017.  They have to establish that they fit within this |
| 2 | affirmative defense.  We can clearly establish that they are |
| 3 | using my client's marks.  The question becomes what do they |
| 4 | have to do in order to meet that presumption of overcoming and |
| 5 | fitting within the exception of the First Amendment. |
| 6 | Now, there are many cases that have been addressed on |
| 7 | a procedural matter be it a motion to dismiss or motion for |
| 8 | summary judgment after some evidence has been held in the case |
| 9 | but when we look at here these facts are so unique we have a |
| 10 | situation where we have breach of a contract, and if we put it |
| 11 | in a criminal context it is almost as if this film is the |
| 12 | product of this poisonous tree.  You cannot breach a contract, |
| 13 | take confidential information, make a film about it and then |
| 14 | turn around and say it's entitled to First Amendment |
| 15 | protection.  We would then be in a situation where we are |
| 16 | creating an environment where it is okay to breach contracts, |
| 17 | make films about individuals, and then assert the First |
| 18 | Amendment.  That's not what the First Amendment is for. |
| 19 | It is clear that they are trading on my client's |
| 20 | rights and it is not clear that they have -- they cannot |
| 21 | establish that they have not misled as to source.  The |
| 22 | statements by Ms. Shelley that she had provided just last |
| 23 | month, she is definitely implying and suggesting that she has |
| 24 | had this long relationship with the family.  There is an |
| 25 | article that TV One is having the actors fly around this |

1  country and do promotion in which they are even stating the
2  family has seen this film, they approve of the content.  It is
3  just not true.  We have not approved the content.  We have not
4  seen the film.
5           So, when we talk about the First Amendment defense,
6  they have to do more than just claim that there is some level
7  of artistic expression, they have to establish at this stage
8  that the film fits within the First Amendment exception, that
9  they actually have not misled and that they have not misled the
10 public as to its content.  Had they provided this Court with
11 the actual film that determination could be met.  Since they
12 have decided not to provide that film for your Honor to review
13 I would say that that weighs against the defendants' argument
14 that they are entitled to a First Amendment defendants here.
15          There are various cases that talk about being entitled
16 to injunctive relief, irreparable harm when marks are being
17 used, when you are losing control of your marks and that's the
18 Tally Ho case from the Eleventh Circuit.  So, I would argue to
19 this Court that because the plaintiffs have established that
20 the defendants are using their marks and the defendants cannot
21 establish that they have met the First Amendment freedom of
22 speech exception, that affirmative defense that, in addition to
23 the breach of contract which in and of itself is enough to
24 grant an injunction here, that my clients are entitled to an
25 injunction under the rights of publicity in addition to the

1     Lanham Act claims.
2              Thank you.
3              THE COURT:  I have reviewed the papers thoroughly.
4     Would counsel for defendant like to add anything?
5              MR. ROSENFELD:  I will try to be brief, your Honor.  I
6     would like to add a few thoughts.
7              Plaintiff is seeking to enjoin a film about himself
8     and more about his daughter on the grounds that it defames him
9     and violates his right of publicity.  This is a film that he
10    has not seen, he doesn't claim to have seen, he hasn't seen the
11    script.  His entire lawsuit is based on pure speculation about
12    what's based in the film, based on a casting notice, and some
13    scant publicity materials for the film.
14             The idea that the Court would grant a prior restraint,
15    which is what this is, flies in the face of 200 years of First
16    Amendment doctrine from the Supreme Court on down.  The Supreme
17    Court has been very clear that it is exceptionally reluctant to
18    grant prior restraints of expressive works.  In the Pentagon
19    Papers case, the threat that the government was bringing to
20    that case was the threat of disclosing national security
21    secrets at war time.  That was not enough to warrant a prior
22    restraint.  In other cases there have been similar, grave
23    threats that the Supreme Court and other Courts have judged not
24    enough for prior restraint.
25             The mere fact that an entertainer thinks that a movie

```
 1    is going to portray him in an unflattering way or violate his
 2    right in some very speculative way based on not having seen the
 3    movie but based on what he expects to see in the movie is
 4    clearly far, far below that threshold.  And it would set a
 5    dangerous precedent where other celebrities or subjects of
 6    films could do the same thing.
 7              Aside from the constitutional flaw in the First
 8    Amendment problem that plaintiff has, and I won't go through
 9    all the claims, but we feel that there are problems with all of
10    the claims, none of them even state a claim let alone establish
11    a likelihood of success.  He hasn't pled or identified in his
12    papers what harm would occur and that alone would establish
13    irreparable harm.  There is nothing in here to justify prior
14    restraint and I will be brief because I know the Court is
15    shaking her head and I will just respond to two things my
16    adversary said.
17              Breach of a contract is not clearly not enough.
18    Breaches of contract are generally compensable by monetary
19    damages.  This happens to be a contract over a reality show 13
20    years ago that ran a season and he is claiming that things --
21    confidential information obtained in the course of making that
22    reality show may be in this movie he hasn't seen.  Entirely
23    speculative, no irreparable harm whatsoever.  If there were any
24    harm it would be compensable by money damages and I am more
25    than happy to address the defamation claim, the trademark
```

1  claim, the right of publicity claim, your Honor if your Honor
2  has any questions, but if you don't, your Honor, I will leave
3  it at that.
4      I guess one last note, your Honor, which is that one
5  of the complaints that we have heard today and seen in the
6  papers is they haven't had a chance to see the film and that
7  doesn't get them there either.  There is a long line of case
8  law which says that even allowing in camera review, which is
9  what plaintiff has requested, of the film, is a violation of
10  First Amendment rights and a prior restraint.  For example,
11  there is a Ninth Circuit case called Goldbloom v. NBC.  There
12  is a Fifth Circuit case United States v. McKenzie.  In all of
13  those cases there were similar situations where plaintiffs
14  wanted to restrain a work, defendant was saying, Judge, just
15  look at it in chambers.  And in both of the cases I just
16  mentioned the district court did so and was reversed and the
17  appellate court said even the government review of the work in
18  chambers itself is censorship and violates the First Amendment,
19  it has a chilling effect, and it is an unconstitutional prior
20  restraint.  So, even in *Porco*, for instance, which plaintiff
21  mentions an injunction was denied and the show aired, despite
22  Court's analysis.  There is no basis for injunction here.
23      Thank you, your Honor.
24      THE COURT:  I will now deliver my opinion.
25      In order to obtain a preliminary injunction, the

1  moving party "must show (a) irreparable harm; and (b) either,
2  (1) likelihood of success on the merits, or (2) sufficiently
3  serious questions going to the merits to make them a fair
4  ground for litigation, and (c) a balance of hardships tipping
5  decidedly toward the partying request the preliminary relief."
6  Cacchillo v. Insmed, Inc., 638 F.3d 401, 405-06 (2d Cir. 2011).
7  A preliminary injunction "however, is an extraordinary and
8  drastic remedy, one that should not be granted unless the
9  movant, by clear showing carries, the burden of persuasion."
10 Moore v. Consolidated Edison Co., 409 F.3d 506, 510 (2d Cir.
11 2005).  It "should issue only where the intervention of a court
12 of equity is essential in order to effectually protect property
13 rights against injuries otherwise irremediable."  Weinberger v.
14 Romero-Barcelo, 456 U.S. 305, 312 (1982).

15         A preliminary injunction is that much more
16 extraordinary when it operates as a prior restraint.  As the
17 Supreme Court has explained, "prior restraints on speech and
18 publication are the most serious and the least tolerable
19 infringement on First Amendment rights."  Nebraska Press
20 Association v. Stuart, 427 U.S. 539, 559 (1976).  This
21 intolerance reflects "a theory deeply etched in our law:  A
22 free society prefers to punish the few who abuse rights of
23 speech after they break the law and to throttle them and all
24 others beforehand."  Southeastern Promotions, Ltd. v. Conrad,
25 420 U.S. 546, 559 (1975).

1        With these principles of law in mind, I have reviewed
2   the parties' written submissions and considered today's oral
3   argument.  Plaintiffs' core contention is that the film
4   violates their rights by depicting Brown and Bobbi Kristina in
5   a false light without their permission.  Because Plaintiffs
6   have not seen the film nor had access to the script, their
7   arguments are speculative and the evidence presented in their
8   briefs does not amount to the clear showing necessary to enjoin
9   Defendants.  Accordingly, I find that Plaintiffs have not met
10  their burden to show a likelihood of success on the merits of
11  their claims.  Plaintiffs' motion for a preliminary injunction
12  is, therefore, denied.
13       I will now explain why I have reached that conclusion.
14       First, plaintiffs claim that the promotion and
15  distribution of the film interferes with their respective
16  rights of publicity.  Specifically, Plaintiffs argue that
17  Defendants have violated Bobbi Kristina's right to publicity
18  under Georgia common law.  This argument fails.
19       In Georgia, a violation of the right of publicity
20  "consists of the appropriation, for the defendant's benefit,
21  use or advantage, of the plaintiff's name or likeness." Martin
22  Luther King, Jr., Center for Social Change, Inc. v. American
23  Heritage Products, Inc., 250 Ga. 135, 142 (1982).  But "the
24  right of publicity does not attach to that which is 'open to
25  public observation.'"  Toffoloni v. LFP Publishing Group, LLC,

1  572 F.3d 1201, 1207 (11th Cir. 2009) (quoting Restatement
2  (Second) of Torts § 652C comment d (1977)).  When the right
3  does not attach, "courts are required to engage in a
4  fact-sensitive balancing, with an eye toward that which is
5  reasonable and that which resonates with our community morals."
6  Id. at 1208.  This "fact-sensitive" balancing requires courts
7  to "navigate between the competing constitutionally protected
8  rights of privacy and publicity and the rights of freedom of
9  speech and of the press" by considering Georgia's
10 "newsworthiness" exception for "matter[s] of public interest."
11 Id.  In short "where the publication is newsworthy, the right
12 of publicity gives way to freedom of the press." Id.
13         Here, it is unclear whether the right of publicity
14 even attaches because (1) the Court cannot know without
15 reviewing the film whether it contains only information open to
16 public observation, or (2) whether that information has already
17 been disclosed in Brown's autobiography, Every Little Step.
18 Even if the right attaches, artistic works concerning matters
19 of public interest fall into Georgia's newsworthiness
20 exception.  Thoroughbred Legends, LLC v. The Walt Disney Co.,
21 No. 07 Civ. 1275, 2008 WL 616253, at *11 (N.D. Ga. Feb. 12,
22 2008).  Here, Robert Brown admits that he is a celebrity, Brown
23 Affidavit paragraph 19, and that his and Bobbi Kristina's lives
24 are matters of public interest, Brown Affidavit  22.
25 Accordingly, Plaintiffs' claim under Georgia law is unlikely to

1     succeed on the merits.

2                Plaintiffs separately argue that defendants have
3     violated Brown's rights under New York Civil Rights Law
4     Section 51 which permits "any person whose name, portrait,
5     picture, or voice is used within this state for advertising
6     purposes and for the purposes of trade without the written
7     consent first obtained" to sue "to prevent and restrain the use
8     thereof" or to "recover damages."  N.Y. Civ. R. Law,
9     Section 51.  Assuming without deciding that New York Law
10    applies to Brown, a California resident, this argument also
11    fails.

12               "To make out a claim under Section 51, a plaintiff
13    must establish (1) that the defendant used plaintiff's name,
14    portrait, or picture, within the state, (2) for purposes of
15    advertising or trade and three without first obtaining
16    plaintiff's written consent."  Lerman v. Flynt Distributing
17    Co., 745 F.2d 123, 129 (2d Cir. 1984).  Plaintiffs cannot
18    satisfy the statute's second prong because using names or
19    likenesses "to depict newsworthy events or matters of public
20    interest" does not constitute advertising or trade under New
21    York Law.  Lemerond v. Twentieth Century Fox Film Corp., No. 07
22    Civ. 4635, 2008 WL 918579, at *2 (S.D.N.Y. Mar. 31, 2008).
23    Newsworthiness is to be "broadly construed" covering "any
24    subject of public interest"  Id. which includes the lives of
25    public figures like Robert Brown, his late ex-wife Whitney

1    Houston, and their daughter Bobbi Kristina.  And, as to any
2    material promoting or advertising the film, it is beyond
3    dispute that "when the advertisement is merely incidental to a
4    privileged use, there is no violation of Section 51."  Lerman,
5    745 F.2d at 130.
6              Plaintiffs' reliance on Porco v. Lifetime
7    Entertainment Services, LLC, 147 A.D.3d 1253 (N.Y. App. Div.
8    2017) is inapposite, as that case was decided on a motion to
9    dismiss which, unlike here, required the Court to construe
10   liberally the plaintiffs' complaint.  Accordingly, plaintiffs'
11   claim under New York Law is also unlikely to succeed on the
12   merits.
13             Second, plaintiffs claim that defendants have violated
14   the Lanham Act's false endorsement provision that prohibits any
15   person "in connection with any goods or services" from "using
16   in commerce any false or misleading description of fact, or
17   false or misleading representation of fact which is likely to
18   cause confusion as to the origin, sponsorship, or approval of
19   his or her goods, services, or commercial activities."  15
20   U.S.C. Section 1125(a)(1).
21             Plaintiffs point to out-of-circuit case law to support
22   their claim that the Lanham Act applies to the film, but the
23   Second Circuit established, in Rogers v. Grimaldi, that "in
24   general, the act should be construed to apply to artistic works
25   only where the public interest, in avoiding consumer confusion,

|   |   |
|---|---|
| 1 | outweighs the public interest in free expression."  875 F.2d |
| 2 | 994, 998 (2d Cir. 1989).  "That balance will normally not |
| 3 | support application of the act" to an artistic work unless (1) |
| 4 | the use of a public figure's marks "has no artistic relevance |
| 5 | to the underlying work whatsoever," or (2), the use "explicitly |
| 6 | misleads" consumers "as to the source or the content of the |
| 7 | work."  Id. at 999. |

        Because the Rogers case concerned a film related to Ginger Rogers and Fred Astaire, I conclude that the film at issue here is an artistic work to which the Rogers two-part test applies.

        As an initial matter, there is no dispute that the use of plaintiffs' marks has artistic relevance to the film. Plaintiffs reply at 12.  Plaintiffs argue only that defendants have misled consumers as to whether the Brown family approved of the film or collaborated in its creation.  The plaintiffs present no evidence to show that.  Neither the e-mail from a morning radio show, Alicia Brown affidavit Exhibit A, nor defendant Baker-Simmons' statements to a reporter, Christopher Brown affidavit Exhibit B, suggest that defendants have "explicitly misled" consumers about the Brown family's approval or involvement in the film.  In fact, defendant Baker-Simmons' statements fact suggest that the film is personal to her and Defendant Shelley rather than to the family.  Plaintiffs' Lanham Act claim, therefore, fails.

1                Third.  Plaintiffs claim that the film defames Brown,
2     again assuming without deciding that New York defamation law
3     applies, this argument also fails.  As the New York Court of
4     Appeals has explained, the "First Amendment bars a public
5     figure from recovering damages in a libel action unless clear
6     and convincing evidence proves that (1) a false and defamatory
7     statement was published with (2) actual malice, that is,
8     knowledge that it was false or with reckless disregard of
9     whether it was false or not."  Kipper v. NYP Holdings Co., 12
10    N.Y.3d 348, 353 (2009) (quoting New York Times Co. v. Sullivan,
11    376 U.S. 254, 279-80 (1964)).
12               Plaintiffs have not presented any evidence, much less
13    clear and convincing evidence, that statements made in the
14    promotion of the film or depictions of events in the film are
15    either false or published with actual malice.  Plaintiffs'
16    primary contentions are that the film inaccurately depicts
17    Brown as (1) a bad father to Bobbi Kristina, and (2) violent
18    toward his late wife Whitney Houston.  First and foremost,
19    these contentions are speculative as plaintiffs have not had
20    access to the contents of the film.  Second, whether Brown was
21    a bad father is a matter of opinion and therefore cannot be
22    said to be either true or false.  Third, Brown has already
23    admitted to "smacking" his late wife "across the face" in his
24    autobiography, Rosenfeld declaration Exhibit 1 at 195,
25    suggesting that defendants may well be able to prove that their

1   depiction of Brown was not false or reckless.  Plaintiffs,
2   therefore, failed to prove a likelihood of success on the
3   merits of their defamation claim.
4           Fourth, like plaintiffs' defamation claim, plaintiffs'
5   breach of contract claim is similarly speculative.  Plaintiffs
6   allege that defendants Shelley Baker-Simmons and B2
7   Entertainment may have breached a confidentiality provision in
8   a 2004 contract that they allegedly signed when working with
9   Brown on the "Being Bobby Brown" show.  Again, this argument is
10  meritless.  Plaintiffs must establish four elements to prove a
11  breach of contract:  (1) The existence of a contract, (2)
12  plaintiff's performance of the contract, (3) defendants' breach
13  of contract, and (4) damages.  Terwilliger v. Terwilliger, 206
14  F.3d 240, 245-46 (2d Cir. 2000).  Plaintiffs cannot make a
15  clear showing of defendants' breach because plaintiffs do not
16  know what material facts or ideas have been used in the film.
17  Plaintiffs cannot discern, therefore, whether anything was
18  taken from the "Being Bobby Brown" show.
19          Finally, in their reply brief, plaintiffs seek to
20  amend the complaint to add a copyright infringement claim
21  because of defendants' seeming reliance on information in
22  Brown's autobiography.  As a general rule, "new arguments may
23  not be made in a reply brief." DSND Subsea AS v. Oceanografia,
24  S.A. de CV, 569 F.Supp.2d 339, 347 (S.D.N.Y. 2008).  I see no
25  reason to make an exception at the eleventh hour here.

1  Plaintiffs may separately seek to amend their complaint
2  pursuant to Federal Rule of Civil Procedure 15(a)(2).  Because
3  I find that plaintiffs have not shown a likelihood of success
4  on the merits, I shall not reach the question of irreparable
5  injury or the balance of hardships.
6          The motion for a preliminary injunction is denied.
7          Are there any other applications?
8          MR. BROWN:  No, your Honor.  Thank you.
9          MR. ROSENFELD:  No, your Honor.
10         THE COURT:  All right.  So, I will see counsel at the
11 initial pretrial conference scheduled for November 13th at
12 10:00 a.m.
13         The matter is adjourned.
14                              o0o
15
16
17
18
19
20
21
22
23
24
25