UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
CHARLES ROANE,

                     *Plaintiff*,

      - against -

A&E TELEVISION NETWORKS, LLC,
SWIRL FILMS, LLC, and JOHN DOES 1-10,

                     *Defendants*.

Case No. 1:25-cv-05286

---------------------------------------------------------------- x

## DECLARARION OF ERIC TOMOSUNAS

I, Eric Tomosunas, declares as follows:

1.     I submit this declaration in support of Defendants A&E Television Networks, LLC ("AETN") and Swirl Films, LLC's ("Swirl Films") opposition to Plaintiff Charles Roane's request for a temporary restraining order and preliminary injunction, which seeks to prevent Defendants from distributing or promoting the movie *Pretty Hurts* (the "Film").

2.     I am the founder, producer, and Chief Executive Officer of Swirl Films, an independent television and film production company. Swirl Films has created over 100 original productions across a number of platforms and distributors, including BET, Lifetime, Hallmark, and Netflix.

3.     Recently, Swirl Films produced the Film *Pretty Hurts*, which it licensed for distribution on AETN's Lifetime network. Swirl Films began work on *Pretty Hurts* in December 2024. The film, starring Haylie Duff, is scheduled to premiere on Lifetime on June 28, 2025.

4.     The Film explores the dark side of the teenage beauty pageant world, through the lens of a former beauty queen mother (Duff) guiding her daughter (played by Sarah Borne) through the toxic and cutthroat pageant experience. As the mother and daughter are preoccupied

with the pageant, the daughter's best friend (played by Kaci Barker) falls seriously ill with meningococcal disease, commonly known as meningitis. The daughter ultimately uses the platform of the beauty pageant to spread awareness about the disease.

5. I understand that Plaintiff Charles Roane seeks to enjoin the distribution of the Film because he believes he is the exclusive agent of Haley Gosserand, an actress who appears fleetingly in the Film. He contends that Ms. Gosserand did not have the right to work on the Film without his approval.

6. Haley Gosserand, who plays the role of Brianna in *Pretty Hurts*, is one of more than 20 actors in the Film's cast. She is not the "star" of the movie. Her name is not included in the main (front) credits for the Film at all, and she appears fifth on the end credits listing the actors in the Film. A true and correct copy of the Film's credits is attached as Exhibit 1 to this Declaration.

7. Ms. Gosserand appears in the film for approximately 12 minutes and 47 seconds out of a total of approximately 88 minutes in the Film.

8. Ms. Gosserand worked for 7 of the 14 days of the film shoot. Her last day of shooting for the film was April 22, 2025.

9. Swirl Films created a single-purpose legal entity, TBP Films LLC ("TBP Films"), for purposes of the *Pretty Hurts* movie. TBP Films entered into an agreement with Haley Gosserand for her participation in the Film, effective April 10, 2025. A true and correct copy of that agreement is attached as Exhibit 2 to this Declaration (the "Agreement").

10. The Agreement provided that Ms. Gosserand would be paid "Four Thousand One Hundred and Eighty US Dollars ($4,180) per week (SAG Scale) plus 10%," "in full

consideration of the services performed, materials furnished, and rights granted under this Agreement."  All told, Ms. Gosserand received $10,639.00 for her work on the Film.

11. Ms. Gosserand agreed that TBP Films would be the exclusive owner of the film and "have all the rights in and to the results and proceeds of [Ms. Gosserand's] services performed" pursuant to the agreement, as well as "the unlimited right throughout the world to exhibit" the film. The agreement expressly incorporated "all the applicable provisions of the terms and conditions contained in the applicable SAG-AFTRA Agreement for Independent Producers of Television Motion Picture" (the "SAG-AFTRA Agreement") appended to the agreement between Ms. Gosserand and TBP Films.

12. Section 6 of the SAG-AFTRA Agreement provides that the producer (in this case, TBP Films) "shall have the perpetual right to use and authorize others to use, throughout the universe and in all media, Artist's name, sobriquet, photograph, likeness, voice and biographical data" in connection with the development, production, exhibition, advertising, marketing, promotion, or other exploitation of the film.

13. Section 11 of the SAG-AFTRA Agreement provides that Ms. Gosserand "represents, warrants and agrees that" she "is free to enter into this Agreement and has not made, nor will make, any agreement, commitment, grant or assignment"; that TBP Films will not "be required to pay to or incur any sums on behalf of any person or entity due to [TBP Films'] ownership, acquisition, use or exploitation of" the material resulting from Ms. Gosserand's services; and that Ms. Gosserand "will indemnify [TBP Films] and its affiliated companies, licensees, successors and assigns" from any breach of Ms. Gosserand's representations, warranties, or agreements or for any tortious acts or omissions by Ms. Gosserand.

14. TBP Films and Swirl Films relied on Ms. Gosserand's representations that she was free to participate in the *Pretty Hurts* project. Indeed, I have no reason to believe that anyone at Swirl had even heard of Plaintiff Roane during the entire time that Ms. Gosserand worked on the Film, or while the Film was made.

15. Only well after filming was complete did TBP Films or Swirl Films become aware of a dispute between Ms. Gosserand and Charles Roane. I had no knowledge of who Mr. Roane was until June 2025.

16. Ms. Gosserand was represented for purposes of her acting career, including *Pretty Hurts*, by Jason Lockhart at Atlanta Models & Talent. Mr. Lockhart also represented three other actors in the show (including the actress playing the daughter).

17. Ms. Gosserand told Swirl Films that her agent/manager was Jason Lockhart at Atlanta Models & Talent.

18. The vast majority of actors Swirl Films works with are represented by talent agents and/or managers, who typically receive a percentage of revenues from certain kinds of work by the talent. Those representatives are paid by the actors pursuant to the individual representation agreements; Swirl Films does not pay talent representatives directly or obtain the consent of talent representatives independent from the consent of the talent whom they represent.

19. If any actor has any issue or claim with their agent, or vice versa, that is an issue that they work out between themselves. Swirl Films never mediates disputes between actors and their agents.

20. Here, I first became aware of the dispute between Ms. Gosserand and Mr. Roane on June 16, 2025 when TBP Films was copied on an email by Dayna Cooper, counsel to Charles Roane, to Julian Cordero, who is counsel to Ms. Gosserand. Ms. Cooper's email attached a letter

to Mr. Cordero, which itself claimed to be in response to a June 4, 2025 letter sent by Mr. Cordero to Ms. Cooper. A true and correct copy of Ms. Cooper's email and attachment is attached hereto as Exhibit 3 to this Declaration.

21. On June 23, 2025, Mr. Cordero copied me on an email attaching his original June 4 letter to Ms. Cooper, which was referenced in Ms. Cooper's June 16 email. A true and correct copy of the June 23, 2025 email and June 4, 2025 letter are attached as Exhibit 4 to this Declaration.

22. Mr. Cordero said in his June 23 email on which I was copied: "Mr. Roane has no authority over Ms. Gosserand's acting or television career. His music production agreement with her expired months ago and was limited to music-related activities only. Mr. Roane is now sending these letters to multiple parties in an apparent attempt to harass and interfere with Ms. Gosserand's legitimate professional opportunities. This is exactly the retaliatory behavior we warned him to stop."

23. The June 4, 2025 letter to Ms. Cooper purported to give "formal notice that the Production and Management Agreement dated December 9, 2022 (the 'Agreement') between Mr. Roane and Ms. Gosserand has expired and is terminated." It further explained that the First and Second Amendments to the Agreement are unenforceable because there was no new consideration for those amendments. And it asked Mr. Roane to cease and desist from interfering with Ms. Gosserand's acting and television career, citing repeated direct threats of professional retaliation that Mr. Roane had apparently made to Ms. Cooper. The letter also stated that Section 4.3 of the Production and Management Agreement between Ms. Gosserand and Mr. Roane—which provides that Ms. Gosserand may "agree to perform at any performance and make any public appearances at [her] sole discretion except that all televised appearance shall be approved

5

by Roane"—must be read in conjunction with Section 2.1(c), which gives Mr. Roane approval rights over "all televised musical performances." In other words, according to the June 4 letter, Section 4.3 "does not independently grant Mr. Roane control over non-musical roles," nor does any other "provision, either express or implied, grant[] Mr. Roane any authority over Ms. Gosserand's acting, television, or film career," and Ms. Gosserand therefore "does not, and never did, require [Mr. Roane's] permission to appear in non-musical productions" like *Pretty Hurts*.

24. I understand that the dispute between Ms. Gosserand and Mr. Roane is ongoing.

25. I also understand that Mr. Roane has brought a claim in this proceeding for a violation of the New York right of publicity—first a statutory claim and now one under the common law. For the avoidance of doubt, Mr. Roane's name, image, or likeness does not appear anywhere in *Pretty Hurts*.

26. Swirl Films and TBP Films have put significant work into the production and the marketing of *Pretty Hurts*. At least 15 members of Swirl's team worked on the project for approximately 7 months, with an additional approximately 100 crew members who worked on the film for approximately 3-4 months.

27. Swirl Films and TBP Films provided AETN with a finished and locked copy of the Film on June 17, 2025.

28. The partnership with AETN is enormously important to Swirl Films. Any delay in the release of the film would not only cause significant financial harm to Swirl Films, but would also irreparably harm our reputation with AETN as a reliable business partner, and with viewers, to whom we have promoted the film extensively and who expect to see it on the scheduled premiere date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed this 27th day of July 2025.

_____
**Eric Tomosunas**

7