# Exhibit 2

Daily / 3-Day / Weekly
SAG-AFTRA ENGAGEMENT CONTRACT (the "Agreement")

| | |
|---|---|
| **Effective Date:** April 10,2025 | **Performer Name**: Haley Gosserand ("Artist") |
| **Producer:** TBP Films LLC ("Producer") | **Loan-Out Company Name (if applicable)**: N/A <br><br> **FED ID:** N/A |
| **Picture:** Teen Beauty Pageant ("Picture") | **Address**: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| | **Telephone No.** ▆▆▆▆▆▆ <br><br> Email: ▆▆▆▆▆▆▆▆▆▆▆▆ <br><br> With copies to: Jason Lockhart <br> 404.261.9627 <br> jason@amtagency.com |
| **TYPE OF ENGAGEMENT**: (__) Daily  (__) 3-Day  (_X_) Weekly | **Attention**: Haley Gosserand |
| **LENGTH OF PROGRAM**: (__) 30 MIN. (__) 60 MIN. (_X_) 90 MIN+ | **SERVICE PERIOD:** On or about April 10,2025 ("**TERM**") <br> **NEXT STARTING DATE**: N/A |
| **TYPE OF PROGRAM**:  (_X_) Television    (___) New Media | |
| **ROLE**: #5 Brianna | **CREDIT**: At Producer's Discretion <br><br> **BILL AS: "Haley Gosserand"** |
| **SALARY**: Four Thousand One Hundred and Eighty US Dollars (**$4,180**) per week (SAG Scale) plus 10%. The compensation paid hereunder shall be in full consideration of the services performed, materials furnished, and rights granted under this Agreement, including but not limited to participating in the principal photography, record sessions, lead-ins and lead-outs, standard non-commercial openings and closings, promotional announcements, station breaks, rehearsals, wardrobe fittings, pick-ups, retakes/re-enactments, added scenes, and looping and/or other post-synching. For the purposes of payroll calculation, actual hours worked shall be paid at SAG-AFTRA Scale, inclusive of idle pay, travel time, fittings, overages, and post-production services. In no event shall Artist be paid less than applicable SAG-AFTRA Scale for all hours worked. | **ADDITIONAL COMPENSATION**: _____N/A_____ <br> The Additional Compensation is an advance payment for telecasts on domestic free television, foreign telecasts, and, except with respect to day performers, basic cable reruns. If this amount is left blank, there will be no advance payment for residuals; Artist will be paid the applicable minimum additional compensation set forth in the SAG-AFTRA Agreement. |
| **SPECIAL PROVISIONS:** Producer shall provide Artist with the following special provisions: <br><br> **Dressing Room:** Artist will be provided with the use of (1) Honeywagon while Artist is rendering performer services hereunder ||

1

This Agreement covers the employment of the above-named Artist by Producer in the Picture at the rate of compensation set forth above, which shall be in full consideration for the services rendered and rights granted by Artist. This Agreement is subject to and shall include all the applicable provisions of the terms and conditions contained in the applicable SAG-AFTRA Agreement for Independent Producers of Television Motion Picture (**"SAG-AFTRA Agreement"**). Artist's employment shall include performance in non-commercial openings, bridges, etc., and no additional compensation shall be payable to Artist so long as such are used in the role covered hereunder in which Artist appears.

Producer shall be the exclusive owner of the Picture and shall have all the rights in and to the results and proceeds of Artist's services performed hereunder as are provided with respect to "photoplays" in Schedule A of the SAG-AFTRA Agreement and the right to supplemental market use to the maximum extent provided in the SAG-AFTRA Agreement. Producer shall have the unlimited right throughout the world to exhibit the Picture theatrically in accordance with the terms and conditions of the SAG-AFTRA Agreement (as defined in the Standard Terms and Conditions attached hereto and incorporated herein by this reference) and, with respect to any such uses, Artist will be paid the applicable minimum additional compensation prescribed therefor by the SAG-AFTRA Agreement.

Producer shall have the unlimited right throughout the world to exhibit the Picture on all forms of television, new media and in Supplemental Markets in accordance with the terms and conditions of the SAG-AFTRA Agreement and, with respect to any such uses, Artist will be paid the applicable minimum additional compensation prescribed therefor by the SAG-AFTRA Agreement.

If Artist places his or her initials in the box below, he or she thereby authorizes Producer to use portions of said television program as a trailer to promote another program, upon payment to Artist of the additional compensation required, if any, per the applicable portions of the SAG-AFTRA Agreement.

Artist's Initials   [ HG ]

Execution of this agreement signifies acceptance by Producer and Artist of all of the terms and conditions in this Agreement and the attached Additional Terms and Conditions, which are incorporated herein.

**NOTICE TO PERFORMER: RETAIN A COPY OF THIS AGREEMENT FOR YOUR PERMANENT RECORDS.**

**ACCEPTED AND AGREED TO:**                                    **ACCEPTED AND AGREED TO:**

                                                                TBP Films LLC

_____                              By: _____
Haley Gosserand                                                     (DocuSigned by: Ty Walker, 4D28FE1BB8BC452...)
                                                                Its:  Executive Producer

2

**STANDARD TERMS AND CONDITIONS**

**1.** **CONDITIONS PRECEDENT**: Producer's obligations hereunder are subject to (i) Artist providing Producer with all documents, including, without limitation, all original documents establishing Artist's eligibility to work in the United States of America, which documents may be required by any agency, governmental agency or otherwise, and/or any employer in connection with Artist's ability to render services hereunder, (e.g., a work visa and/or INS Form I-9), as applicable, which forms have been completed to Producer's satisfaction; (ii) signature and delivery of this Agreement to Producer; and (iii) satisfactory outcome of any required post-offer, pre-employment background checks shall be a condition of Artist's continued employment and Producer's obligations hereunder.

**2.** **COMPENSATION/SERVICES: This compensation is subject to all withholdings and deductions that employers are required to make by law, or by any union or guild having jurisdiction.**  Artist's Initials __HG__

**3.** **SERVICES:** Artist will render all of the services customarily performed by a performer in connection with a live action program and will render such services to the best of his/her ability.  Artist agrees that his/her services will include participating in the principal photography, record sessions, lead-ins and lead-outs, standard non-commercial openings and closings, promotional announcements, station breaks, rehearsals, wardrobe fittings, pick-ups, retakes/re-enactments, added scenes, looping and/or other post-synching, short form "extras" produced during the Service Period (*e.g.,* behind-the-scenes footage, character vignettes, "soft news" featurettes, interviews, etc.) and, as more fully set forth below, all services reasonably required in connection with promotion, marketing and publicity of the Picture.  If additional payments are required by the SAG-AFTRA Agreement for any of the services described above, Artist agrees to accept the minimum amount required by SAG-AFTRA.  Artist's services hereunder are at all times subject to Producer's approval and are of the essence of this Agreement. Producer will be entitled, without additional payment, to the maximum amount of work and production time permitted by the SAG-AFTRA Agreement (as defined below).  Without additional payment, to the extent permitted by the SAG-AFTRA Agreement, Producer may average work days.

**4**.  **RIGHTS:**
(a) All artistic, literary, dramatic, musical and other materials submitted by Artist, together with the results and proceeds of Artist's services, in connection with this Agreement (the **"Material"**) are specially commissioned by Producer as a work made for hire.  Accordingly, Producer is the author and owner of all rights, title and interest in and to the Material, including all copyrights in the Material (and all renewals and extensions thereof), with the right to use and change the Material in any manner that Producer may determine.  If any of the Material is determined not to be a work made for hire, Artist hereby assigns to Producer in perpetuity all rights, title and interest in and to the Material, including all copyrights in the Material (and all renewals and extensions thereof) and the rights, if any, of Artist to control the renting, lending, fixation or exploitation of the Material.  Artist agrees that Producer may exploit the Material (including behind-the-scenes, audition and rehearsal footage, and Digital Properties [as defined below]) in any and all media, now known or hereafter devised, throughout the universe, in perpetuity.
(b) Artist waives all moral rights which may now or later be recognized under the laws of any country throughout the world.  Artist's performance may be edited, cut, or otherwise modified as Producer or its licensees or assignees elect. Producer may dub Artist's voice or use a double or "sound alike" instead of Artist as and when Producer elects to the extent permitted by the SAG-AFTRA Agreement. "Digital Properties" means games, apps and other interactive digital properties intended to engage viewers with the Picture.
(c) Artist agrees that Producer, its licensees or designees shall have the right, in perpetuity, to use excerpts of any length containing Artist's performance for all purposes, worldwide, and in any manner and media now known and hereafter devised including for inclusion in promotional materials, merchandise, and other productions and projects. For such uses, Artist shall be paid the applicable minimum compensation required to be paid under the SAG-AFTRA Agreement, if any.
(d) Artist grants to Producer the perpetual right to use the soundtrack(s) of the Picture or any portion thereof containing Artist's voice and/or any results and proceeds of Artist's services hereunder, or any re-recordings thereof, in connection with the manufacture, distribution, sale, use or other exploitation of commercial phonograph records, tapes, and all other forms of recordings, worldwide in all media, now known and later devised (hereinafter collectively referred to as "Sound Recordings") and to sell, distribute and otherwise use and exploit and/or to license third parties the right to sell, distribute and otherwise use and exploit such Sound Recordings.  Producer agrees that if one (1) or more Sound Recordings containing Artist's voice and/or the results and proceeds of Artist's services hereunder are commercially released by Producer or its

assigns, Producer will pay or cause to be paid to Artist the minimum amount payable, if any, pursuant the SAG-AFTRA Agreement.

5. **UNION PRODUCTION**: If any provision of this Agreement conflicts with the mandatory provisions of the SAG-AFTRA Agreement, the provisions of the SAG-AFTRA Agreement shall prevail; however, only if the Agreement shall be limited to the extent necessary to permit compliance with the minimum mandatory terms and conditions of the SAG-AFTRA Agreement. To the extent the SAG-AFTRA Agreement requires payment to Artist for television reruns, supplemental markets, foreign telecasts, theatrical release or any other uses, Artist shall be entitled to receive such payment at the minimum applicable rate(s) required by the SAG-AFTRA Agreement; however, Artist acknowledges and agrees that to the extent Artist's compensation hereunder is in excess of two hundred percent 200% of the minimum initial compensation required by the SAG-AFTRA Agreement (**"overscale compensation"**), 100% of such overscale compensation shall be deemed a prepayment and applied to the fullest extent permissible under the SAG-AFTRA Agreement against any required payments for replays, re-use fees or any other additional payments that may become due to Artist under the terms of the SAG-AFTRA Agreement. To the extent the following requirement may be lawful, Artist represents and warrants that she or he is or shall become, and shall remain for the duration of Artist's services hereunder, at Artist's sole cost and expense, a member of SAG-AFTRA in good standing. Producer shall acquire the maximum rights permitted to be acquired by an employer under the SAG-AFTRA Agreement. If a union other than SAG-AFTRA has jurisdiction over Artist's services in connection with the Picture, all references hereunder to the SAG-AFTRA Agreement shall be deemed to be a reference to the applicable collective bargaining agreement of the applicable performers' union having jurisdiction over the Picture.

6. **NAME, VOICE AND LIKENESS**: Producer shall have the perpetual right to use and authorize others to use, throughout the universe and in all media, Artist's name, sobriquet, photograph, likeness, voice and biographical data (collectively, **"Personal Data"**) in and in connection with: (a) the development, production, exhibition, advertising, marketing, promotion (including, without limitation, in connection with webisodes, "behind-the-scenes" footage, sponsorships, sweepstakes and commercial tie-ins), publicizing, merchandising, publications, and/or other exploitation of the Picture (and/or any other motion picture or other works based on the Picture or Material), and all allied, subsidiary and ancillary rights of any nature related thereto (including, without limitation, Digital Properties, merchandising and commercial tie-in rights and over the internet, on multimedia platforms, in videogames, etc); and (b) the advertising, marketing, promotion and publicizing of any exhibitor of the Picture (the **"Network"**) and their respective services, affiliates, sponsors, operations and activities. No additional compensation shall be payable to Artist for any of the foregoing uses of Artist's Personal Data unless required by the SAG-AFTRA Agreement, in which event Artist shall be paid the applicable minimum compensation payable under the SAG-AFTRA Agreement. Artist agrees that Artist's name, voice and likeness may be stylized to fit any Digital Property, with it being understood that such use does not constitute a use entitling Artist to guild or union residuals, unless otherwise required by the applicable guild or union.

7. **BLOOPERS, OUTTAKES**: Artist agrees to permit Producer to record and use any and all behind-the-scenes footage, bloopers and outtakes in connection with the Picture.

8. **SPONSOR INTEGRATION:** Artist acknowledges that, as determined by Producer in its sole discretion, the Picture, including without limitation, the advertising, marketing and promotion thereof, may contain product placements, product integrations, sponsor identifications, product demonstrations, sponsored Picture promotional announcements or interstitials and/or other similar sponsor-related references, information or activities (collectively, "**Sponsor Integrations**"). Artist's services hereunder will include active participation in and with such Sponsor Integrations as required by Producer, including, naming, identifying, wearing, using, describing, endorsing, demonstrating and/or otherwise referring to, or interacting with, sponsor products, services and/or brands (each, a "**Sponsor Activity**"); and (b) Artist hereby grants to Producer the irrevocable and perpetual right and license, throughout the universe, in any and all media, manner or platforms in any language to use and/or license Artist's name, voice and/or likeness (including as may be embodied and contained in the Picture) (collectively, "**Name and Likeness**") for, and in connection with, the sale of third party products, goods and services; if Artist's Name and Likeness is not used in a manner that constitutes a direct endorsement Artist hereby agrees that Artist shall not be entitled to any additional compensation for any of the foregoing uses unless required by the SAG-AFTRA Agreement, in which event Artist shall be paid the applicable minimum compensation payable under the SAG-AFTRA Agreement.

9. **PUBLICITY:** Any publicity, paid advertisements, press notices and other information with respect to the Picture and all ancillary exploitation thereof (excluding normal, incidental, non-derogatory publicity relating solely to Artist's involvement with this Picture after Artist's involvement has been made public by Producer) shall be under Producer's sole control.

Therefore, Artist shall not issue nor consent to nor authorize any person or entity to release any such information without Producer's express prior written approval. Artist shall not make any comments or appearances or release any information that might or will denigrate, parody, make fun of or cast a bad light upon the Picture, Network, or Producer (or any of their respective affiliated or related entities), nor may Artist elsewhere portray or parody the character(s) that Artist portrays hereunder.

10. **PROMOTION:** Artist shall render publicity, promotional, marketing, and advertising services in connection with the Picture, without further compensation, as Company reasonably requests (Artist acknowledges that six appearances is reasonable), but shall at a minimum appear at TCA (up to twice per year [January and/or July in Los Angeles] as required by Company), and (at Network's expense), the Picture' premiere, Comic-Con "up-front" presentations to advertisers, and additional festivals and convention events as requested by the Network (collectively, the "**Designated Appearances**"). Further, in addition to any photo/video shoots occurring during production and/or on-set, Artist shall be available, following completion of principal photography, for up to two (2) additional days for gallery and/or promo shoots to produce marketing and promotional material in connection with the Picture (including, without limitation, head shots, promos, lead ins, bumpers, "behind the scenes" or "making of" films) without any additional compensation. Artist shall render publicity and promotional services for at least three (3) days (excluding travel days and telephone interviews) after completion of principal photography, including, without limitation, publicity events, press interviews in New York and Los Angeles, electronic press events, remote broadcasts and personal appearances in connection with the Picture as reasonably requested by the Network for no additional compensation. Notwithstanding anything to the contrary herein, Company shall be the sole and exclusive owner of all services, results and proceeds rendered pursuant to this Paragraph and same shall be deemed a work "made-for-hire" for Company (or assigned to Company as provided in Paragraph 4 of the Standard Terms if not deemed a work-for-hire) and subject to all of Company's rights as further set forth herein. In connection with Artist's services (if any) under this Paragraph 10, Company shall provide travel accommodations in accordance with the SAG-AFTRA Agreement.

11. **REPRESENTATIONS, WARRANTIES & INDEMNITIES**: Artist represents, warrants and agrees that: (a) Artist shall not perform for any third party as any character which Artist created and/or performed in connection with the Picture without the express written consent of Producer; (b) Artist is free to enter into this Agreement and has not made, nor will make, any agreement, commitment, grant or assignment, nor will Artist do any act or thing which could or might interfere with or impair the complete enjoyment of the rights granted, and the services to be rendered, to Producer hereunder; (c) except for material Producer provides to Artist, the Material either is original with Artist or is fully cleared by Artist, and that neither the Material nor Producer's use of the Material as contemplated by this Agreement will infringe or violate any rights of any person or entity, nor shall Producer be required to pay to or incur any sums on behalf of any person or entity due to Producer's ownership, acquisition, use or exploitation of the Material, except as herein provided; (d) the Material furnished, presented and/or performed by Artist (including any so-called "ad-libs") in and in connection with the Picture or the advertising and promotion thereof shall not be offensive, distasteful, obscene or indecent or otherwise inappropriate for a family audience according to the Networks' broadcast standards; and (e) Artist has obtained and will maintain at all times during the term of this Agreement any and all work permits, immigration clearances and guild clearances necessary to enable Artist to perform Artist's services hereunder. Artist will indemnify Producer and its affiliated companies, licensees, successors and assigns, and its and their respective officers, directors, shareholders, employees, representatives and agents, and any person(s) or entity(ies), owning, financing, producing, distributing and/or otherwise exploiting the Picture (or any other project for which Artist renders services hereunder), or the Material against any claims, damages or penalties (including reasonable attorneys' fees and costs) arising out of or resulting from, in whole or in part, (i) any breach of Artist's representations, warranties or agreements hereunder; (ii) the malfeasance and/or negligence, intentional misconduct or other tortious acts or omissions of Artist or any agent, employee, or invitee of Artist; or (iii) any acts by Artist outside of the scope of Artist's employment hereunder or contrary to Producer's instructions. The fact that a program is pre-recorded and subject to editing shall in no way alter Artist's representations and warranties or Artist's obligation to indemnify Producer with respect to a breach thereof.

12. **NO EQUITABLE RELIEF**: In the event of any breach of this Agreement or any portion hereof by Producer, Artist's sole remedy shall be an action at law for damages actually suffered; in no event shall Artist seek nor have the right to obtain injunctive or other equitable relief or to enjoin or restrain or otherwise interfere with the production, distribution, exhibition or other exploitation of the Picture or of any product based on or derived from the Picture.

13. **NO OBLIGATION**: Producer is not obligated to use the services of Artist or to develop, produce, distribute, or exploit the Picture or, if commenced, to continue the development, production, distribution, or exploitation of the Picture in any territory; and regardless of whether or not Producer elects to develop, produce, distribute and/or exploit the Picture (or to

commence same), Producer shall not be obligated to use the services (in whole or in part) of Artist hereunder and Artist shall not be entitled to any damages or other relief by reason thereof.

14. **PRODUCTION RULES**: Artist agrees to comply with Producer's directions, requests, rules and policies, including policies regarding the following: use of mobile devices during work, outside guests at workplaces, decorum appropriate for a workplace where minors may be present, and health and safety issues). Artist acknowledges that any breach of this Paragraph by Artist shall be deemed to be a material breach of this Agreement.

15. **HEALTH INSURANCE/PHYSICAL ACTIVITY**: Producer may secure life, health, accident, cast or other insurance covering Artist, and Artist shall have no right, title or interest in or to the benefits or proceeds from such insurance, if any. At Producer's request Artist shall submit to usual and customary medical examinations for Producer's insurance purposes (including self-insurance) and shall sign such applications or other documents reasonably required in connection therewith. If any such examination establishes a substantial doubt as to Artist's ability to complete Artist's services hereunder, or if cast insurance covering Artist cannot be obtained for normal premiums and without substantial exclusions, Producer may terminate this Agreement with no further obligations to Artist whatsoever.

16. **TERMINATION**: Artist's services are terminable at will by Producer, for any reason or for no reason at all. If Artist is terminated hereunder other than for default, Producer shall pay Artist those fees that are due and payable for services fully rendered up until the date of termination. If Artist is engaged hereunder on a pay-or-play basis, and Artist is terminated without cause (i.e., other than for default, incapacity or force majeure), Producer shall pay Artist any unpaid portion of Artist's guaranteed fixed compensation.

17. **SURVIVAL OF PROVISIONS**: Neither the expiration nor termination of this Agreement, or of Artist's services hereunder, shall diminish, impair, modify or otherwise affect any of the provisions hereof capable of surviving such expiration or termination, including, without limitation, provisions respecting Producer's ownership of the Picture and all elements thereof, the grant of rights to Producer in and to the Material, representations and warranties, indemnification, Artist's waiver of injunctive relief, publicity, confidentiality, and construction.

18. **ASSIGNMENT**: The nature of Artist's services hereunder is personal in nature and Artist shall not assign or transfer any of Artist's rights or obligations hereunder. Producer's rights in the Material and this Agreement may be freely assigned and licensed, in whole or in part, and any such assignment or license shall be binding upon Artist and shall inure to the benefit of such assignee or licensee.

19. **CREDIT**: All matters regarding the credit to be accorded Artist (if any) under this Agreement will be determined by Producer in its sole discretion subject to requirements of the SAG-AFTRA Agreement. With respect to any credit accorded to Artist hereunder, Producer shall have the right to (a) "squeeze" such credit at Producer's sole discretion. No casual, inadvertent or unintentional failure of Producer to provide Artist with credit (by reason of shortage of time or otherwise), nor any failure by any third party to comply with any credit provision hereof will constitute a breach by Producer of this Agreement, nor shall any such failure be considered irreparable or otherwise sufficient to entitle Artist to seek injunctive or other equitable relief.

20. **UNIQUE SERVICES**: Artist acknowledges that the services to be rendered by Artist hereunder are of a unique and original character giving them a peculiar value, the loss of which cannot be reasonably compensated in damages in an action at law. Artist further agrees that, in addition to all other rights that Producer may have, Producer shall be entitled to injunctive relief and/or other equitable relief, against any threatened, potential or actual breach by Artist of one or more of the provisions of this Agreement.

21. **FEDERAL COMMUNICATIONS ACT**: Artist acknowledges that it is a crime under Section 507 of the Federal Communications Act for any person in connection with the production or preparation of any program intended for broadcasting to accept or pay any money or provide any service or other valuable consideration for the inclusion of any matter as a part of any such program without disclosing the same to the employer of the person to whom such payment is made or to the person for whom such program is being produced. Artist further acknowledges that it is Company's policy not to permit any employee to accept or pay any such consideration. Artist expressly agrees that s/he will not accept or pay, or agree to accept or pay, any such consideration. Artist warrants that s/he will not violate any such law. And Artist further agrees that Artist shall promptly deliver to Producer, upon request, such affidavits and statements as Producer may require under the Federal Communications Act or to otherwise evidence Artist's compliance of the foregoing.

22. **CONFIDENTIALITY**: Artist agrees that any information Artist learns during the course of or in connection with Artist's engagement hereunder concerning Producer's (and/or any financier(s) and/or exhibitor(s) of the Picture) business operations, strategies, future plans, financial affairs, or any other information concerning Producer (and/or such financier(s)

and/or exhibitor(s)), their parent, subsidiary and/or affiliated companies, is confidential and proprietary, and Artist will not disclose any such information to any third party. Artist's confidentiality obligations and publicity restrictions hereunder shall apply to any and all media, including, any social networking site; micro-blogging service; user-generated or user-uploaded content website; online forum, discussion thread or comment section; personal website or blog; user modified website ("wiki"); or any other website, service, platform, program, application or other form or method of communication, whether now known or hereinafter devised. For example, Artist may not make disclosures prohibited hereunder via Facebook, Twitter, YouTube or any other similar website or service, whether existing now or in the future.

23. **FURNISHING WARDROBE**: Artist agrees to furnish all modern wardrobe and wearing apparel reasonably necessary for the portrayal of said role; it being agreed, however, that should so-called "character" or "period" costumes be required, the Producer shall supply the same. When Artist supplies any wardrobe, Artist shall receive the cleaning allowance and reimbursement specified in the SAG-AFTRA Agreement.

24. **NOTICES**: Unless indicated otherwise in the Agreement, all notices to be given hereunder shall be in writing by personal delivery, mail, electronic mail or facsimile, at the respective addresses given above (or such other addresses as are given in writing by Artist or Producer in accordance with this provision).

25. **INTERPRETATION; DEFINITIONS**: The headings or titles of paragraphs of this Agreement are inserted solely for the convenience of reference and are not a part of the Agreement nor are they intended to govern or aid in the construction of any provision hereof. All instances of the word "including" will mean "including, without limitation."

26. **MISCELLANEOUS**: This Agreement shall be governed and construed in accordance with the internal laws of the State of Georgia applicable to agreements executed and wholly to be performed within such state. The parties consent and agree to the exclusive jurisdiction and venue of the state and federal courts having jurisdiction over Fulton County, Georgia, with respect to any action that any party desires to commence arising out of or in connection with this Agreement or any breach or alleged breach of any provision of this Agreement. All parties waive any objection as to improper venue or that any state or federal court of Georgia is an inconvenient forum. No waiver by Producer of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All remedies accorded herein or otherwise available to Producer shall be cumulative, and no one such remedy shall be exclusive of any other. Artist acknowledges that Artist has been advised to obtain, and has obtained, legal counsel to provide Artist with independent advice as to the contents of this Agreement. Artist further acknowledges that this Agreement has been made freely and voluntarily and that Artist is signing same with full knowledge and understanding of all of its terms. This Agreement contains the entire understanding of Artist and Producer regarding the within subject matter. This Agreement may not be changed or modified nor may any provision hereof be waived, except in writing by the parties hereto. A facsimile signature on this Agreement shall have the same force and effect as if it were an original signature. Nothing herein contained will constitute a partnership between or joint venture of Producer, on the one hand, and Artist (and Lender, if applicable), on the other hand, nor constitute either party the agent of the other. Neither party will hold itself out contrary to the terms of this Paragraph, nor will it become liable for the representation, act or omission of the other contrary to the provisions hereof. If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required and the remaining portions of this Agreement shall be interpreted as if such portion(s) were so limited or excluded and shall be enforceable in accordance with its terms. This Agreement may be executed in counterparts, and each counterpart shall be deemed an original, and all counterparts taken together shall constitute one and the same agreement, which shall be binding and effective as to all parties.

[END OF STANDARD TERMS AND CONDITIONS]