# Exhibit 4

| | |
|---|---|
| **From:** | Julian Cordero <julian@mycorderolaw.com> |
| **Sent:** | Monday, June 23, 2025 6:11 PM |
| **To:** | Strom, Rachel |
| **Cc:** | eric@swirlfilms.com; tia@swirlfilms.com |
| **Subject:** | Re: Pretty Hurts |
| **Attachments:** | 06-04-2025 Gosserand Termination and Cease Letter re Charles Roane.pdf |

Hi Rachel,

I'm removing Dayna.

I am Julian Cordero, attorney for Haley Gosserand. I understand you received a cease and desist letter from Charles Roane's counsel making claims about Ms. Gosserand.

These claims are completely baseless. Mr. Roane has no authority over Ms. Gosserand's acting or television career. His music production agreement with her expired months ago and was limited to music-related activities only.

Mr. Roane is now sending these letters to multiple parties in an apparent attempt to harass and interfere with Ms. Gosserand's legitimate professional opportunities. This is exactly the retaliatory behavior we warned him to stop.

Attached is the letter we sent to Mr. Roane's counsel explaining why his contract has expired and demanding he cease this interference. As you can see, this is a pattern of improper conduct.

Please do not be intimidated by these baseless threats. If you have any questions or need clarification about the actual legal situation, please contact me directly.

Best,
Julian

**Julian Cordero**
Managing Attorney
Cordero Law LLC

**p:** 212-960-8890
**w:** https://www.corderolawgroup.com
**e:** julian@mycorderolaw.com
**a:** 1330 Ave of the Americas, Suite 23A, New York, NY 10019

On Mon Jun 23, 2025, 08:46 PM GMT, Dayna Cooper wrote:
> Rachel,
>
> Please see attached.
>
> Best regards,
> Dayna



**Dayna C. Cooper, Esq., Principal**
(202) 642.5470 (ph)   (757) 257.9878 (fax)
www.CooperLegalSolutions.com

 SCHEDULE APPOINTMENT     ACCESS CLIENT PORTAL

**NOTICE:** This message (including any attachments) from Cooper Legal, LLC may constitute an attorney-client communication and may contain information that is **PRIVILEGED, CONFIDENTIAL, and/or ATTORNEY WORK PRODUCT.** If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy, or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to info@cooperlegalsolutions.com.

On Mon, Jun 23, 2025 at 9:25 AM Strom, Rachel <RachelStrom@dwt.com> wrote:
> Great, thank you. You would also mentioned that because your client is an agent he's able to assert claims for Haley as if he is Haley. I looked, but cannot find any cases that say that, could you point me in the right direction?
>
> Thank you.
>
> Get Outlook for iOS
>
> **From:** Dayna Cooper <dayna@cooperlegalsolutions.com>
> **Sent:** Monday, June 23, 2025 8:07:51 AM
> **To:** Strom, Rachel <RachelStrom@dwt.com>
> **Subject:** Re: Pretty Hurts
>
> **[EXTERNAL]**
>
> Rachel,
>
> I am in meetings this morning. I will have my response to you this afternoon.
>
>
> Best regards,
> Dayna



**Dayna C. Cooper, Esq., Principal**
(202) 642.5470 (ph)   (757) 257.9878 (fax)
www.CooperLegalSolutions.com

2

📅[SCHEDULE APPOINTMENT](#)    [ACCESS CLIENT PORTAL](#)

**NOTICE:** This message (including any attachments) from Cooper Legal, LLC may constitute an attorney-client communication and may contain information that is **PRIVILEGED, CONFIDENTIAL, and/or ATTORNEY WORK PRODUCT.** If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy, or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to [info@cooperlegalsolutions.com](mailto:info@cooperlegalsolutions.com).

On Fri, Jun 20, 2025, 2:07 PM Strom, Rachel <[RachelStrom@dwt.com](mailto:RachelStrom@dwt.com)> wrote:

Ms. Cooper:

Thank you for taking time to discuss this case with me.

As I promised, here are some of the cases dealing with TRO's for lifetime's shows, which have uniformly been ruled to be First Amendment violations. https://www.hollywoodreporter.com/business/business-news/lifetime-tv-wins-appeal-chris-697553/ and https://deadline.com/2024/02/wendy-williams-lawsuit-lifetime-documentary-1235835322/  The Porco decision is attached, if useful.   It makes the point that "While judicial redress following publication is available if it is ultimately proven that defendant abused its rights of speech, it was constitutionally impermissible under these circumstances to forbid that speech prior to its actual expression ."  *Porco v Lifetime Entertainment Services, LLC,* No. 516390, 984 N.Y.S.2d 457, 459, 2014 N.Y. Slip Op. 02641, 2014 WL 1491564 (3d Dep't 2014).

I think this should end the discussion of a TRO to prohibit publication of the movie.   But, as discussed, I would be happy to talk if you disagree.

If your client chooses to seek a TRO, A+E would rely on the anti-SLAPP law, because that TRO would not have a substantial basis in the law.  The Reeves case, which I am attaching, discusses the applicable standard.   We would then recover attorneys fees – which are mandatory under the statute, which Reeves also discusses.  (Notably, at the time Porco was decided the anti-SLAPP law was not available to entities such as A+E and the press, we have filed an anti-SLAPP counterclaim in the Wendy Williams case I am litigating now).

Once you review, let me know if you would like to discuss. I am also happy to discuss why I believe even a post-publication lawsuit against my client would fail at the outset, but I wanted to just put the idea of a TRO behind us (hopefully).

Thank you and have a nice weekend.

Rachel

**Rachel Strom**
**Partner,** Davis Wright Tremaine LLP

**P** 212.402.4069  **C** 917.723.2161  **E** rachelstrom@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dayna Cooper <dayna@cooperlegalsolutions.com>
**Sent:** Friday, June 20, 2025 11:50 AM
**To:** Strom, Rachel <RachelStrom@dwt.com>
**Subject:** Re: Pretty Hurts

**[EXTERNAL]**

Sorry for the delay. I'm pretty open for the remainder of the day. Thanks

Best regards,

Dayna

**Dayna C. Cooper, Esq., Principal**
(202) 642.5470 (ph)     (757) 257.9878 (fax)
www.CooperLegalSolutions.com

**SCHEDULE APPOINTMENT**          **ACCESS CLIENT PORTAL**

**NOTICE:** This message (including any attachments) from Cooper Legal, LLC may constitute an attorney-client communication and may contain information that is **PRIVILEGED, CONFIDENTIAL, and/or ATTORNEY WORK PRODUCT.** If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy, or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to info@cooperlegalsolutions.com.

On Fri, Jun 20, 2025, 10:37 AM Strom, Rachel <RachelStrom@dwt.com> wrote:

I am so sorry, I know have a call then. Can I call at 1:30 or after?

**Rachel Strom**
**Partner,** Davis Wright Tremaine LLP

**P** 212.402.4069  **C** 917.723.2161  **E** rachelstrom@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dayna Cooper <dayna@cooperlegalsolutions.com>
**Sent:** Friday, June 20, 2025 11:33 AM
**To:** Strom, Rachel <RachelStrom@dwt.com>
**Subject:** Re: Pretty Hurts

**[EXTERNAL]**

11:45 is fine. Please give me a call

5

Best regards,

Dayna

**Dayna C. Cooper, Esq., Principal**
(202) 642.5470 (ph)     (757) 257.9878 (fax)
www.CooperLegalSolutions.com

SCHEDULE APPOINTMENT          ACCESS CLIENT PORTAL

**NOTICE:** This message (including any attachments) from Cooper Legal, LLC may constitute an attorney-client communication and may contain information that is **PRIVILEGED, CONFIDENTIAL, and/or ATTORNEY WORK PRODUCT.** If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy, or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to info@cooperlegalsolutions.com.

On Fri, Jun 20, 2025, 8:35 AM Strom, Rachel <RachelStrom@dwt.com> wrote:

Hello Ms. Cooper-

I got your voicemail last night, and would love to find a time to talk.

Are you free at 11:45 this morning or after 1:30 pm?

**Rachel Strom**
**Partner |** Davis Wright Tremaine LLP
**P** 212.402.4069  **C** 917.723.2161  **E** rachelstrom@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

**DWT.COM**

6

**CorderoLaw**

**JULIAN CORDERO**
MANAGING ATTORNEY

**VIA EMAIL**

June 4, 2025

Dayna C. Cooper
Cooper Legal, LLC
dayna@cooperlegalsolutions.com

**Re:   Termination of Agreement and Demand to Cease and Desist from Interference with Haley Gosserand's Career by Your Client, Charles Roane.**

We represent Haley Gosserand with respect to her prior business dealings with your client, Mr. Charles Roane.

This letter serves as formal notice that the Production and Management Agreement dated December 9, 2022 (the "Agreement") between Mr. Roane and Ms. Gosserand has expired and is terminated. There is no continuing agreement between Mr. Roane and Ms. Gosserand.

**I. Termination of Agreement**

The Agreement established a finite "Shopping Period," as defined therein, which expired two years from the conclusion of the Development Term. No recording agreement was secured during that period.

Although two documents, titled "First Amendment" and "Second Amendment," purport to extend the Shopping Period, they are unenforceable. They fail to reflect any new, mutual exchange of value or bargained-for performance. A unilateral extension imposing new obligations without fresh consideration is void under standard contract principles. There is no evidence of mutual negotiation or performance beyond what was already required under the original Agreement.

Accordingly, the Agreement expired by its own terms on or about February 28, 2025, and no operative contract remains.

**II. Cease and Desist from Interference and Harassment**

Mr. Roane's recent conduct demonstrates a clear intent to interfere with Ms. Gosserand's acting and television career, despite having no authority to do so.

**A. Threats to Contact Third Parties**

Mr. Roane has made multiple statements that are not only inappropriate but constitute direct threats of professional retaliation. These statements were plainly intended to intimidate and interfere with Ms. Gosserand's professional opportunities in acting and television. The following statements are not presented as verbatim quotations, but are based on contemporaneous documentation and are believed to accurately reflect the substance and tone of what was said:

- *You can decide to do the right thing, Haley, or you can have it all go down in flames.*
- *My next phone call is to the executive producer to your show.* My next phone call will be to *Jeff Gaspin. Tread lightly.*
- Anyone who goes against me will get the wrath of me.
- *I will gladly go down that path with you.*
- …[I] signed the waiver under duress… Netflix's legal department will be triggered and they will sue you.
- …some young girl that misleads people to get roles…
- Shut the fuck up.
- With one phone call.. I could end your career. That's not a threat… that's a consequence.
- After [Wednesday], *we pull you from the Netflix show and the Lifetime movie.*
- *On Thursday, Jeff Gaspin gets the call and so does Lifetime Television. And then Fox gets a call because they've already aired you.*

These are not vague expressions of frustration. They were deliberate threats aimed at sabotaging Ms. Gosserand's career through fear, reputational harm, and obstruction. This conduct is improper, retaliatory, and legally actionable.

**B. Improper Assertion of Authority**

Mr. Roane has repeatedly claimed that Ms. Gosserand is not permitted to do anything televised without his permission. That is a misreading of the Agreement.

Section 2.1(c) pertains specifically to televised musical performances. While Section 4.3 refers more broadly to "televised appearances," it is clearly situated in the context of musical engagements and does not independently grant Mr. Roane control over non-musical roles.

There is no provision, either express or implied, granting Mr. Roane any authority over Ms. Gosserand's acting, television, or film career.

Even if the Agreement were still in effect (which it is not), Mr. Roane's claims to such authority are baseless. Ms. Gosserand does not, and never did, require his permission to appear in non-musical productions. Any further attempt to leverage this misreading to block, delay, or interfere with professional opportunities will be treated as a knowing abuse of his prior position and dealt with accordingly.

### C. Tortious Interference with Business Relations

Mr. Roane's conduct constitutes intentional interference with Ms. Gosserand's existing and prospective business relationships. His threats to contact Netflix, Lifetime, Amazon, Fox, and industry executives like Jeff Gaspin demonstrate a deliberate attempt to disrupt her professional opportunities through intimidation and false claims of authority.

This interference is particularly egregious because:

- Mr. Roane lacks any legitimate business justification for his threatened actions, as he has no contractual authority over Ms. Gosserand's acting career;
- His stated intent is explicitly retaliatory - to punish Ms. Gosserand for asserting her rights;
- The interference is designed to cause reputational and economic harm through fear and obstruction rather than legitimate business competition;
- His threats target specific, valuable business relationships that Ms. Gosserand has cultivated in the entertainment industry.

Such conduct exposes Mr. Roane to significant liability for damages to Ms. Gosserand's career and reputation.

### III. Demands

Given that Mr. Roane's threats have already caused Ms. Gosserand anxiety about her professional relationships and could result in substantial damages to her career trajectory, earning capacity, and professional reputation if carried out, Mr. Roane is hereby instructed to:

1. Immediately cease and desist from contacting, or threatening to contact, Netflix, Amazon, Lifetime, Fox, Jeff Gaspin, or any other third party associated with Ms. Gosserand's acting or promotional engagements;

2. Refrain from making any further representations that he holds approval rights or oversight with respect to her non-musical appearances;

3. Confirm in writing within five (5) business days that he will comply with the foregoing and will not assert any further involvement in Ms. Gosserand's career.

If Mr. Roane fails to comply, Ms. Gosserand may pursue all available legal remedies, including injunctive relief, claims for tortious interference, and recovery of attorneys' fees.

A copy of this letter is also being sent to Mr. Roane via certified mail at the address specified in Section 18.1 of the Agreement. This transmission is made

Page 4 of 4

solely to satisfy the Agreement's formal notice provision and does not constitute an attempt to communicate with Mr. Roane directly regarding the substance of this matter.

This letter is not a full recitation of all facts or legal positions. All rights, claims, and remedies are expressly reserved.

Sincerely,

Julian Cordero