**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| CHARLES ROANE, | Civil Action No. 1:25-CV-5286 |
| Plaintiff, | |
| v. | |
| A&E TELEVISION NETWORKS, LLC, SWIRL FILMS, LLC, and JOHN DOES 1-10, | |
| Defendants. | |

## DECLARATION OF TIFFANY CRUZ

I, Tiffany Cruz, declare as follows:

1.  I am the Vice President, Content Operations at A&E Television Networks, LLC. I have personal knowledge of the facts set forth in this declaration, and submit this declaration in support of the Opposition of Defendants A&E Television Networks, LLC ("AETN") and Swirl Films, LLC ("Swirl Films") to Plaintiff Charles Roane's Motion for a Temporary Restraining Order.

2.  AETN has two primary distribution channels: linear channels, meaning the channels a customer would receive through their cable company, and a video on demand distribution model ("VOD").

3.  In my role, I am responsible for VOD distribution. As relevant here, my team builds, supports, and operates the media supply chain for content distributed by AETN through VOD channels. These channels include both a "download to own/download to rent" element ("DTO/DTR"), where consumers can purchase or rent movies and television shows to view from up to twelve online platforms (such as Amazon, iTunes, and DirecTV), and a cable television distribution element ("Cable FVOD"), through which AETN provides copies of film and

1

television content through a third-party distributor to operators of approximately 90 affiliate cable stations, so that consumers who were unable to view the Film during its premiere are able to view it on their own cable company's platform. Through my role, I am responsible for ensuring our distribution complies with Service Level Agreements ("SLAs") with these third-party distribution platforms, including providing them accurate broadcast schedules for AETN networks, such as Lifetime, and packaging and delivering content for VOD distribution.

4. I learned on June 25, 2025 that the Plaintiff Charles Roane filed a motion for a preliminary injunction to prevent AETN from distributing the feature scripted drama *Pretty Hurts* (the "Film"), which is set to premiere on the Lifetime linear channel on June 28.

5. I also understand that the Court has scheduled a hearing on the motion for a TRO for 2:00 p.m. on Friday, June 27 (the "Hearing").

6. Complying with any such court order would impose significant logistical difficulties related to VOD distribution. (My colleague William Pedlow can best address the linear distribution challenges.)

7. Initially, to ensure we meet our obligations to VOD partners and do not impose unnecessary burdens and constraints upon our or our partners' digital teams, we make a practice of delivering content as soon as it is ready and packaged for delivery. The latest we could reasonably deliver the Film would be at the end of the day on Friday, the day before its scheduled linear premiere. Typically, however, we would deliver earlier, as soon as possible after the Film is ready. In this case, the Film has been ready since Thursday afternoon, June 26.

8. Holding back or canceling the Film's scheduled premiere would impose significant burdens on VOD distribution. Seven DTO/DTR platforms have already signed on to distribute the Film, and this may increase to up to twelve. If the Court were to issue an order

after the Hearing preventing distribution of the Film, my team would need to prepare replacement content, distribute a new broadcast schedule, and follow up with all these partners to verify it has been received. Our digital partners all have different SLAs, which require different amounts of advance notice for schedule changes, adding to the logistical difficulty. We would then need to package and deliver the replacement content, and again confirm with our partners that there are no issues.

9. Because digital teams do not usually work on weekends, it would be difficult if not impossible to ensure our partners are adequately informed of these changes, risking damage to our partner relationships. A last-minute schedule change would also impact viewership, as viewers would seek out the Film according to its planned schedule but would not be able to find it, resulting in tangible harm. This would further damage our relationships with partners, who expect our content to draw reliable audiences.

10. We would have to engage in a similar process for our Cable FVOD distribution. The scheduling team would need to ensure that new schedules are delivered late Friday. Our metadata operations team would need to prepare and send out metadata updates. And all this would need to be delivered to our third-party distributor to send out to partners. This would need to be followed by a distribution of replacement content, and then communications with cable company partners to confirm there have been no issues. Because cable audiences are expected to seek out content on a time delay, rather than via download at any time, I would expect the audience impact of a last-minute schedule change would be even more significant than for DTO/DTR, resulting in tangible damage to our goodwill with both Cable FVOD partners and audiences.

11.     At times, when schedule changes are put in place at the very last minute (as would be the case here if an order is issued Friday afternoon barring distribution), the result ends up being that no content is posted because there's too much confusion.  The cost and damage to AETN in that event would be even more significant.

12.     In the event an order is issued after the Film is distributed, it would be all but impossible for AETN to enforce it.  Through distribution, copies of the Film are sent to all our up-to-twelve DTO/DTR partners and approximately 90 cable affiliates.  We are no longer in control of those copies once they are distributed.  While we could put best efforts into reaching out to these outlets to request they "hold" the Film, we simply cannot guarantee these efforts would be successful in all cases.  The difficulties would be heightened here, because our efforts would largely have to take place during weekend hours.  We cannot control who would be working at the outlets during these hours, or whether they would be able to "hold" the Film.

13.     For these reasons, ensuring AETN's compliance with a potential court order restraining publication of the Film will place a significant burden on the company as a whole, and on my team, specifically.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed this 26th day of June, 2025.

Signed by: Tiffany Cruz
68C6E6DFC7EC4A6...

Tiffany Cruz