**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES ROANE | Case No: :1:25-cv-5286-GHW |
| Plaintiff, | |
| v. | |
| A&E TELEVISION NETWORKS, LLC, SWIRL FILMS, LLC, and  JOHN DOES 1-10 | |
| Defendants. | |

<u>**PLAINTIFF'S REPLY IS SUPPORT OF TEMPORARY RESTRAINING ORDER AND**</u>

<u>**PRELIMINARY INJUNCTION**</u>

**PRELIMINARY STATEMENT**

Defendants attempt to reframe this straightforward contractual enforcement action as a First Amendment censorship case while downplaying the material harm caused by their unauthorized commercial exploitation of Ms. Gosserand's persona. But Plaintiff Charles Roane holds an exclusive, enforceable agreement granting him the right to approve all televised appearances by Ms. Gosserand, a right he has diligently exercised and protected. The evidence shows that Defendants were placed on actual notice of these rights weeks before the scheduled release of *Pretty Hurts* and consciously chose to proceed in the face of that notice. Plaintiff seeks to prevent further irreparable harm to his contractual interests, business reputation, and professional leverage. The elements for injunctive relief are satisfied.

## I. PLAINTIFF ACTED PROMPTLY TO PROTECT HIS RIGHTS

Defendants contend that Plaintiff delayed in seeking a TRO. This is flatly contradicted by the record. Plaintiff issued a cease-and-desist letter on **June 4, 2025**, enclosing the governing contract and explicitly reserving all rights. Ex. 1. On **June 16**, Plaintiff's counsel followed up, reiterating the demand for withdrawal and making clear that legal action would be pursued. *Id.* Plaintiff filed this motion on June 24, a prompt, reasoned, and proportionate response to Defendants' continued refusal to pause or resolve the dispute.

Not only did Defendants disregard Plaintiff's timely outreach, they also refused to engage in any meaningful good-faith negotiations. Instead, they selectively adopted only the positions convenient to their desired outcome, ignoring black letter contractual provisions and documentary evidence presented to them. Rather than resolve the conflict, they delayed their

response, stonewalled communication, and continued distributing the film without seeking clarification or attempting to mitigate. That approach further underscores the inequity of allowing them to benefit from their own calculated indifference.

## II. DEFENDANTS' CLAIMED HARDSHIP IS SELF-INFLICTED AND OUTWEIGHED BY PLAINTIFF'S IRREPARABLE INJURY

Defendants assert that enjoining the release of *Pretty Hurts* would cause severe hardship due to marketing expenses, scheduling disruption, and reputational loss. But courts do not reward parties who knowingly proceed with infringing conduct. See *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). Defendants were placed on actual notice of Roane's exclusive rights on June 4, 2025 and continued promoting the film without pause. Any hardship they face now is self-inflicted. Moreover, commercial inconvenience does not outweigh the loss of control over an exclusive, contractual right. Defendnats citation to *Harper & Row* and *Arenas v. Shed Media* is misplaced. Those cases involved lawful acquisition and production. This case involves the **deliberate use** of a performer whose rights were exclusively controlled by another party, in direct defiance of legal notice.

## III. DEFENDANTS ACTED IN BAD FAITH BY DISREGARDING KNOWN CONTRACTUAL RIGHTS

Defendants' conduct throughout this matter reflects a pattern of bad faith. After receiving Plaintiff's cease-and-desist letter on June 4, 2025, which included the binding agreement and amendments, Defendants did not investigate or pause their distribution. Instead, they continued marketing, promoting, and scheduling the release of the film with full knowledge of Roane's exclusive rights.

Even more troubling, the claim that the contract had "expired" was first raised just hours before Roane's cease-and-desist notice was sent. This timing strongly suggests a coordinated effort to retroactively manufacture a defense. The notion that Ms. Gosserand unilaterally ended her relationship with Roane is also belied by documentary evidence showing that she continued to collaborate with him through late May 2025 on music releases, Vevo integrations, and brand development. Ex. 2 .

Notably, this is not the first time Ms. Gosserand has breached the agreement. In 2024, a similar unauthorized engagement led to a temporary fallout between the parties. Roane Decl., genereally Rather than sever ties, the parties negotiated and executed the Second Amendment to the agreement, which expressly extended the term and addressed Roane's concerns over her prior breach. *Id.* That amendment was entered in July 2024 following her violation of the agreement. Despite that breach and fallout, the parties reconciled and continued to work together productively, demonstrating a history of collaboration despite past disagreements. *Id.* To date, Ms. Gosserand has not terminated her agreement. *Id.,* Ex. 2.

Defendants consciously chose to align with the more convenient narrative**,** ignoring the controlling contract and betting that Roane would not or could not enforce it in time. Their refusal to acknowledge or act upon the contract until days before release demonstrates reckless disregard and intentional misconduct, particularly by sophisticated entities like A&E and Swirl Films.

Courts have repeatedly recognized that bad faith conduct, especially where a party ignores clear contractual obligations or deliberately avoids investigating known rights, supports the issuance

of injunctive relief. *Cargill, Inc. v. Sears Petroleum & Transp. Corp.,* 388 F. Supp. 2d 37, 74 (N.D.N.Y. 2005)("After a party receives actual notice of another's rights to an issued patent, that party is charged with an affirmative duty to act with due care.")(Citing *Read Corp.*, 970 F.2d at 828; *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983)); *Gowan v. Patriot Group, LLC (In re Dreier LLP),* 2011, Bankr. S.D.N.Y., 452 B.R. 391(" ("[A] party's knowledge of a disputed fact may also be proved through evidence that he consciously avoided knowledge of what would otherwise have been obvious to him. As we have explained in the criminal context, [t]he rationale for the conscious avoidance doctrine is that a defendant's affirmative efforts to `see no evil' and `hear no evil' no not somehow magically invest him with the ability to `do no evil.' . . . [The law] does not tolerate a person shutting his eyes to a fact . . .").

That conduct weighs heavily in favor of injunctive relief.

## IV. PLAINTIFF FACES IRREPARABLE HARM THAT JUSTIFIES INJUNCTIVE RELIEF

Plaintiff faces enduring and irreversible harm to his business, reputation, and professional leverage. Mr. Roane is not a passive investor or background consultant—he is a Grammy-winning producer and artist developer with over 30 years of experience in the music and entertainment industry. His business model centers on identifying emerging talent, investing personal capital into their development, and controlling the timing, context, and scope of their public exposure to strategically position them for high-value record deals and long-term brand success. Ms. Gosserand's appearance in Pretty Hurts, a widely promoted, commercial television project, was not authorized by Roane, yet it directly impacts the public narrative and image he

had carefully cultivated for her. That appearance, now out of his control, erodes the exclusivity at the heart of the parties' Agreement and undermines a multi-year investment of time, money, and brand strategy.

This type of reputational and professional damage cannot be undone or compensated after-the-fact. *See Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir. 1999); *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 286–87 (2d Cir. 2012). Furthermore, Mr. Roane's reputation as a gatekeeper and negotiator of exclusive artist deals is jeopardized. If a producer of his stature can be circumvented by talent without consequence, his reputation as a negotiator, gatekeeper, and talent advocate is permanently impaired. His ability to attract new artists, enforce existing agreements, and close strategic deals is directly compromised. Such harm is precisely the kind courts in this Circuit deem irreparable. *See, Onassis v. Christian Dior–New York, Inc.,* 472 N.Y.S.2d 254 (Sup. Ct. 1984); *Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013); B*arnhart v. Paisano Publications, LLC,* 457 F. Supp. 2d 590 (D. Md. 2006); *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562 (1977).

## V. UNJUST ENRICHMENT AND UNFAIR COMPETITION ARE LEGALLY AND FACTUALLY SUPPORTED

Defendants gained the benefit of Ms. Gosserand's appearance, likeness, and brand identity, all cultivated by Plaintiff, and used them for marketing, distribution, and profit. That benefit came at Roane's expense, with full knowledge of his rights. *Georgia Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516 (2012). The Supreme Court has explicitly endorsed unjust enrichment as a rationale for protecting publicity rights. In *Zacchini*, the Court emphasized the need to prevent "theft of

goodwill" and highlighted that unauthorized commercial use constitutes unjust enrichment. 433 U.S. at 576.

## VI. THE CLAIMED TERMINATION OF THE AGREEMENT IS BASELESS AND CONTRIVED

Defendants' assertion that Ms. Gosserand is a "former client" is factually and legally false. The contract between Roane and Ms. Gosserand has *not expired*, nor has it been properly terminated. As detailed in Plaintiff's June 16, 2025 letter to her counsel, the Second Amendment, effective July 15, 2024, extends the Agreement through December 31, 2026 and is supported by adequate consideration, including her involvement in a television project. Ex. 2. That letter also made clear that no written notice of termination had ever been issued in compliance with the Agreement's terms. The claim of expiration is a post hoc fiction, transparently contrived to evade liability for a clear contractual breach. Roane's counsel emphasized that Ms. Gosserand continued to actively work with Roane through late May 2025, including approving music mixes and coordinating Vevo and YouTube integration. This ongoing course of conduct is fundamentally inconsistent with any claim of expiration, and it further estops Defendants from denying the Agreement's enforceability.

## CONCLUSION

Defendants knew of Plaintiff's exclusive rights. They chose not to act. They continued distributing and promoting content in direct violation of those rights. Plaintiff has shown likelihood of success, irreparable harm, and equities in his favor. The Court should issue a temporary restraining order and preliminary injunction to halt further damage.

DATED: June 27, 2025                    Respectfully submitted

                                        By: _____
                                        Dayna C. Cooper
                                        COOPER LEGAL, LLC
                                        1 Olympic Place, Suite 900
                                        Towson, MD 21204
                                        (202) 642-5470
                                        Dayna@CooperLegalSolutions.com
                                        *Attorney for Plaintiff Charles Roane*